### Moses Judah *against* Immer Judd.

*A.*, on the 5th of *February*, 1810, at *S.* in this state, made his promissory note, for 657 dollars, 35 cents, payable to *B.* or order, three years after its date : *B.*, on the 17th of *March* following, at the city of *New-York*, assigned the note to *C.* of the city of *New-York*, who immediately put a letter into the post-office at *New-York*, addressed to *A.* at *S.*, containing notice of the assignment; and on the 19th of *May* following, sent a similar notice to *A.* at *S.* ; but the first letter was never received. The note being in

**MOTION** for a new trial.

This was a *scire-facias* against *Judd*, as garnishee, in a process of foreign attachment.

The original action was brought against *John Shotwell* and *Jeremiah Shotwell* ; and the defendant, *Judd*, was served with a copy of the process, on the 26th of *March*, 1810.

On the trial, it appeared, that on the 5th of *February*, 1810, at *Southington* in this state, the defendant made and executed his promissory note to *John & Jeremiah Shotwell*, for 657 dollars, 35 cents, payable to them or their order, three years after its date ; that on or before the 17th of *March*, 1810, *John & Jeremiah Shotwell*, at the city of *New-York*, for a valuable consideration, assigned the note to one *Gilbert Shotwell* of the city of *New-York* ; but the note was not then actually endorsed and delivered to the assignee, it being in the possession of *Nathan Smith*, Esq. of *New-Haven*, as the attorney of *John & Jeremiah Shotwell* ; they, however, on the 19th of *March*, requested *Smith* to deliver the note to *Hallet & Shotwell*, of which firm *Gilbert Shotwell* was a partner ; so that the note was not in fact endorsed and delivered over to the assignee until after the 31st of *March*, 1810 ; after which time, it was so endorsed and delivered. It appeared, also, that on the 17th of *March*, 1810, nine days before the defendant was served with notice of the process, *Gilbert Shotwell* addressed a letter to the defendant, and lodged the same in the post-office in the city of *New-York*, giving him notice of the assignment of the note ; and that on the 19th of *May*

the hands of *B.*'s attorney in this state, at the time of the transfer, was not in fact endorsed and delivered over to *C.* until after the 31st of *March*, 1810. After the execution of the note, *D.* commenced a suit, by process of foreign attachment, against *B.*, and on the 26th of *March*, 1810, a copy of such process was left with *A.* as the trustee and debtor of *B.* On a *scire-facias* brought by *D.* against *A.*, it was held, 1st, that notice of the assignment, to the maker of the note, was indispensably necessary to the validity of the transfer ; and 2dly, that merely putting a letter into the post-office, at *New-York*, containing notice of the assignment, was not sufficient to vest the property of the note in the assignee.

following, he addressed another letter to the defendant, giving him similar notice, and also stating, that he had previously written to him, to the same effect. It was, however, proved, that the letter of the 17th of *March*, was never received by the defendant.

It was contended, in behalf of the plaintiff, that notice of the assignment of the note, was indispensable to establish the validity of the transfer to *Gilbert Shotwell* ; that such notice was not proved by the facts disclosed on the trial; and that, therefore, he was entitled to a verdict. The court charged the jury, that it was unnecessary to enquire into any fact put in issue by the parties, other than that respecting the notice before mentioned ; and that in point of law, the facts disclosed did not prove such notice, and, therefore, directed them to find a verdict for the plaintiff. The jury returned their verdict accordingly : Whereupon, the defendant moved for a new trial, on the ground of a misdirection ; which motion was reserved for the consideration of the nine Judges.

*Daggett* argued in support of the motion. He cited *Green* v. *Gillet, ante,* 485. *Wakefield* v. *Martin,* 3 *Mass. Rep.* 558. *Dix* v. *Cobb,* 4 *Mass. Rep.* 508. *Sill* v. *Worswick,* 1 *H. Black.* 691.

*T. S. Williams,* contra. He cited *Woodbridge* v. *Perkins,* 3 *Day's Rep.* 364.

MITCHELL, Ch. J. The question arising upon this motion, is, whether the right to the money due on the note given by *Immer Judd* to *John & Jeremiah Shotwell,* is, by law, vested in the assignee, or in *Moses Judah,* the creditor of the assignors ?

The note was executed in *Connecticut,* and was made payable to the *Shotwells,* or their order. The assignment was made at the city of *New-York,* while the note was in the hands of *N. Smith,* Esq. at *New-Haven.* A letter containing notice of the assignment was put into the post-office at *New-York,* nine days previous to the leaving of the copy of the

process in service with the defendant ; yet, the letter containing such notice was not received ; nor was any notice of the assignment received, until about two months after notice of the foreign attachment. The note was not actually endorsed and delivered to the assignee, until after the service of the foreign attachment.

The recent decisions of the courts in *Great-Britain*, which have been adopted by our courts, have placed beyond all dispute, the assignable nature of *choses in action ;* and notice to the debtor, of the assignment, is clearly necessary to secure the title of the assignee. Without such notice, all acts of the assignor relating to an assignable instrument, are binding : A payment, or release will be effectual. Notice is said to be indispensable to render the assignment of a specialty sufficient ; and by our law, all written contracts executed, as the note in question was executed, were, at the time of the assignment, considered as specialties.

It is, however, urged, that the assignment was valid, at all events, as between the parties, without notice ; and that as the attaching creditor can be in no better situation than his debtor, he must attach the property subject to all liens created by him. Upon this principle proceeded the case of *Wakefield* v. *Martin*, 3 *Mass. Rep.* 558., and the case of *Dix* v. *Cobb*, 4 *Mass. Rep.* 508. The court, in expressing their opinion in these cases, say, that as the debtor, after the assignment and before notice, has no equitable interest in the *chose in action*, the creditor can acquire none by his attachment, as he attaches only the right and interest of the assignor. The correctness of these decisions may be doubted, since the determination of the case of *Woodbridge* v. *Perkins*, 3 *Day's Rep.* 364. The principle on which the above objection is founded, cannot, therefore, be adopted by this court.

In the case of *Woodbridge* v. *Perkins*, there was an assignment of a book-debt, without notice to the debtor. The court held, that until notice to the debtor, he remained the debtor of the assignor ; and, of course, could not be considered as the debtor of the assignee ; that in case of an assignment of a bond, or note, notice and delivery were both necessary ;

and, as in that case, the book-debt was incapable of delivery, that notice alone was sufficient; but that such notice was indispensable, and the want of it would defeat the interest of the assignee in favour of an attaching creditor. Doubtless, the assignment in that case, was operative and effectual, as between the parties; but the attaching creditor took the property discharged from the lien to which it was subjected in the hands of the assignor.

Indeed, the claim of an attaching creditor may, with good reason, be regarded in a more favourable light than that of the assignor himself. There can be no equity in permitting the latter to retain the amount due upon a *chose in action*, which has been assigned by a solemn and deliberate contract, and after having received, as in common presumption he must have done, a full consideration for the transfer. Indeed, to allow him to recover the money, would hazard the interest of a *bona fide* purchaser; and would tend to the grossest injustice, as well as to a circuity of action: For the assignee would recover the money received by the assignor, by virtue of an implied covenant or promise contained in the contract of assignment.

But an attaching creditor appears under circumstances totally different from those of the assignor. Having parted with his property, relying upon the responsibility of his debtor, he has the same equity as the assignee: To allow him a preference, would neither lead to injustice, nor promote litigation. It would barely secure to one party, who has taken all those steps which the law makes necessary, a preference over another who has been guilty of no laches. *Vigilantibus, non dormientibus, jura subveniunt.*

If a prior mortgagee neglects to give notice of his lien, by recording his deed, a second mortgagee will be preferred, if he procures his deed to be first recorded; and yet the first conveyance may have been perfectly good as between the parties, and the second mortgagee acquires a title divested of an incumbrance to which it was subject in the hands of the mortgagor, at the time of the second transfer. The same rule is applicable in case there are two grantees of

land, both claiming title by absolute deeds of feoffment, where the grantee in the deed last executed, procures it to be first recorded.

If the note in the present case, had, before notice given to the debtor, been assigned over by the promisee to a second *bona fide* purchaser, and notice of the latter transfer been immediately given, the second assignee would have been preferred. And it is difficult to perceive why the interest of an attaching creditor should be regarded less favourably, than that of a second assignee in the case mentioned. The only difference between the two cases consists in this, that the one became assignee by the voluntary act of the promisee, and the other by his diligence, and the operation of law. They ought equally to take the property discharged of the prior incumbrance.

It is further argued, that in the present case, no laches is imputable to the assignee, since notice was put into the post-office at *New-York*, nine days previous to the leaving of the copy in service; and that due diligence is equivalent to actual notice.

It is true, that by the law merchant, the sending a notice of non-acceptance, or non-payment, by the first mail, has been deemed equivalent to actual notice, although the letter should miscarry. *Chitty on Bills*, 234. This rule was dictated by reason of convenience, and established for the benefit of commerce. But the present case cannot be governed by the principles of mercantile law, since the doctrine relating to notice above mentioned, is wholly inapplicable to a case of a transfer of a note; much less does it apply to the assignment of a *chose in action*, of a description, which, in our law, is deemed a specialty. In the case of *Woodbridge* v. *Perkins*, notice is said to be indispensable. Besides, it does not appear, that notice was sent by the first mail, as required by the rule above mentioned; but merely, that nine days elapsed between the sending of the notice, and the leaving of the copy of the writ with the garnishee. An interval of nine days was more than sufficient to enable the assignee to give actual notice to the debtor, at the distance of one

hundred miles. The sending of a deed by mail for the purpose of being recorded, in case real estate had been transferred instead of a note, would not have been considered sufficient. Due diligence, in such case, is all that would be required; and yet, an attaching creditor, provided his evidence of title was first recorded, would hold against the prior grantee, unless he had lodged his deed with the town-clerk, within a reasonable time. *Moore* v. *Watson*, 1 *Root's Rep.* 388. *Franklin* v. *Cannon*, 1 *Root's Rep.* 500. *Welch* v. *Gould*, 2 *Root's Rep.* 287. 1 *Swift's Syst.* 308.

Whether a delivery of the note, as well as notice, was necessary to render the assignment valid, as laid down in *Woodbridge* v. *Perkins*, and in *Ryall* v. *Rolle*, 1 *Atk.* 177. is a question which the court need not decide; since the want of notice is fatal to the claim of the assignee.

A new trial ought not to be granted.

The other Judges, severally, concurred in this opinion.

New trial not to be granted.