MacDonald & Graham, et als, Appellants, *vs.* Kneeland & Luddington, Respondents.

#### APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

A Railroad Company deposited with a firm composed of five members, certain railroad bonds, in relation to which they were to receive a certain contract from the firm. The death of one of the members prevented the execution of the contract on their part, and it was thereafter agreed that one of the survivors should execute the contract originally proposed, and that it should be guaranteed by all the other survivors. It was accordingly drawn up and signed by two of them, who were resident in this State, and delivered to the Company. It was at the same time agreed that a duplicate of the contract should be drawn and signed by the same parties, and then forwarded East, to receive the signatures of two of the survivors resident there, and that upon the delivery to the Company of the contract, guaranteed by all the surviving members of the firm, the contract first delivered, guaranteed by two, should be given up and cancelled. The contract, guaranteed by all the survivors, was delivered to the Company, but the Company, through inadvertence of its officers, afterwards neglected to redeliver the contract and guaranty first delivered, and afterwards assigned it to third parties, as security for money by them advanced to the Company. *Held*, that the temporary contract first delivered had no force or effect after the delivery of the second, or substitute. The Company had no right to use or retain it, and could convey none by an assignment of the same.

An assignment, *inter alia* conveying a void contract evidencing a debt, does not vitiate or render nugatory that part of the instrument conveying the debt itself in apt and sufficient terms.

A party making an absolute assignment of a chose in action, parts with all his interest in the same, and a subsequent attaching creditor or assignee can acquire no interest therein. If the debtor pays to the assignor, without notice of the assignment, the latter will be held to have received the same as trustee for the assignee, and even a judgment obtained against the debtor as garnishee (before payment,) will not defeat the rights of the assignee, at least where the facts proved in an action brought to set aside the judgment disclose superior equities in the assignee.

The Code has dispensed with the rule requiring the assignee of a chose in action *to* use the name of the assignor in bringing suit, but it does not therefore follow that the legal estate in the thing assigned passes to the assignee; on the contrary, the only object of this provision of the Code seems to have been to assimilate the practice in Courts of Law to that which always prevailed in Courts of Equity, in permitting the real party in interest to sue in his own name. The interest or right acquired under the assignment is an equitable one, and governed by the same principles which Courts of Equity have always been wont to apply in like cases.

### Points and Authorities of Plaintiffs in Error.

I.—We claim that the contract or indebtedness of Pease to the Railroad Company was never assigned to the Plaintiffs. This Pease contract was not like a negotiable instrument, and could not be transferred so as to vest any more rights in or under it than the company had at the time of such transfer.

If the Company could not sue upon it, and had no rights under it, or claim to it, then the person taking it would be in the same situation. 11 *Paige,* 467.

Now at the alleged time of this assignment to the Plaintiffs, the Railroad Company had no rights under this contract, and no right to the possession of it. The contract had performed its office, and was null and void. The Plaintiffs

thereupon acquired no rights under or to it; this, we think, is not denied, but it may be claimed that not only was the contract assigned, but together with it, " all the interest of the said Company in the bonds mentioned in the said contract or agreement, and the avails of said contract or agreement and the bonds therein mentioned."

Now it is evident, we think, that these words, used in the connection as they are, do not embrace or carry anything more than what would be included in a naked absolute assignment of the contract. The contract was the principal thing being assigned, and these words, which follow the transfer of the contract as above quoted, are only to particularize rights and interests supposed to be conferred by and to exist under the contract, and to pass by its transfer.

The whole language shows that the only object and purpose was to transfer the contract, with all rights against the parties to it, under or growing out of it. As the Company had no rights or interests under or growing out of the contract against the parties to it, at the alleged time of its transfer, the Plaintiffs took nothing. In substance and effect the assignment was a transfer of the contract, and the avails thereof, and of all the interest of the Company in the bonds or avails thereof, *by virtue of the contract.*

Analyze the language above quoted, and what can be claimed as having been transferred by it independent of the contract? What passed by the words, " all the interest of the said Company in the bonds mentioned in the said contract or agreement?" Clearly nothing at all, for the simple reason that the Company, at that time, had no interest in the bonds as such; it had before transferred the bonds, and all its interest in them to Pease.

Pease could return the same bonds, or others of a similar character, or pay for them in money at his option. No judgment was taken against Pease in the garnishee proceeding for the bonds, but for their value. Next, what passed by the words, " and the avails of the said contract or agreement and the bonds therein mentioned?" Clearly nothing, we think, because the contract, having performed its office, was null and void, and there could, therefore, be no " avails " of it; and

as to the bonds, .the avails intended and referred to, were such as should arise under and by virtue of the contract, otherwise it would be too vague and indefinite to mean anything.

II.—The assignment to the Plaintiffs, such as it was, gave no rights of any kind to the Plaintiffs, and was in no way binding upon the Railroad Company, for the reason that Benjamin Pringle, who transacted the business in the name, and in behalf of the Company, had no valid authority to act, *it not being in the power of the Directors of the Company to confer such authority upon him.* Angell & Ames on Corporations, s. 277; Hoven vs. New Hampshire Asylum for the Insane, 13 N. H. R., 532; Percy vs. Mellenden, et al., 3 Louisiana R., 568; Tippets vs. Walker, 4 Mass. R. 595; Emmerson et al. vs. The Providence Hat Manf. Co., 12 Mass. R., 237; Beatley vs. The Warren Ins. Co., 2 Johns, 109.

III.—It is alleged in the complaint that Pease was immediately notified of the alleged assignment to the Plaintiffs, *but this is denied in the answer,* and there was no proof offered to show, and it is not found by the Referee that any such notice was *ever* given *at any time* before the commencement of this suit, or that Pease *ever* had knowledge of any such alleged assignment, as in fact he had not. Now it is well settled in England, and by numerous cases in many of the States, that the title and right to a chose in action does not pass and vest in the assignee until notice of assignment given to the debtor. 3 Day, 364; 5 Day, 53; 10 Conn., 444; 14 Conn., 145; 13 Mass., 153; 16 Missouri, 416; 25 Vermont, 593 ; 20 Conn., 393., 1 Sneed, (Tenn,) 330 ; 4 John Ch. R., 460.

In some of the States it is held that the title passes by act of assignment without notice, but it is universally held not only that notice of the assignment must be given to the debtor before payments are made or equities arise between him and the assignor, *but also before any judgment is rendered, and before he is required to disclose in a garnishee proceeding, as a debtor of the assignor.* Drake on Attachment, s. 527, 606, 607, 510, 613–615; 2 Mass., 488; 13 Ill., 486; 1 Ashmead, (Pa.) 190; Hardin, (Ky.), 160; 4 Mass, 450–512; 11

*Mass.*, 488; 1 *Iowa*, 404 (*Iowa Digest, pages* 70 *and* 71); 37 *Maine*, 408.

IV.—If the Plaintiffs had any valid lien upon the Pease indebtedness there has been no valid sale of that indebtedness to them, as claimed. *Wheeler vs. Newbould, p.* 392, *New York Court of Appeals.*

Points and Authorities of Respondent.

*First.*—The assignment by Railroad Company to Plaintiffs was valid, and vested in the Plaintiffs a right to the contracts.

The error of the Defendants in this action is in confounding a contract with the *evidence* of that contract.

*The contract* in this case is one and the same, whether *evidenced* by one *duplicate* or the other. A writing is not a contract—it is only the *evidence* of the contract, and the best evidence of it, whether the contract is described as guaranteed by Pease & Hunt, or by them and Paine & Pease, is indifferent. It is in either case the same contract. At the time of the assignment the Company could have sued on either, or rather they could have sued on *the* contract.

The guaranty in no way affects the contract. It is joint and several. Suppose now the contract had been executed in quadruple instead of duplicate, and one guarantor had signed each of the quadruples, would it have made any difference in the rights of the parties, except that the guarantors could not be sued jointly. They would certainly all guaranty the *same* contract and not four different contracts; and in a suit in relation to the contract, any reference to the guaranties would be mere matter of description of the contract, and open to explanation as such. So here the two and the four members did not guaranty different but the same contracts, and it could only have been their ignorance of the law of the case that made them desire the destruction of a duplicate of a contract. Referring then to the instrument of assignment, exhibit "B," folio 154 of case, we find this *contract* clearly described, and we find the assignment of the contract and not of the guaranty. Reject then as mere surplusage in the description (which it certainly was,) the words "guaranteed by R. M. S. Pease and Charles Hunt," and we have a descrip-

tion which affects equally either duplicate. Include the words, and we find both duplicates guaranteed by these men, and one of them by two more; but both guaranties, of course, referring to the contract and not to the special duplicate on which they are written.

It certainly would seem clear that the Company had but one contract with Mr. Pease, and that contract they assigned to the Plaintiffs.

As to the point that the Board of Directors had no authority to make their agent to borrow money, it is sufficient to say that no such point was made before the referee, or in the Court below, or appears in the case. 22 *N. Y.* 294, 535.

*Second.*—The assignment of the contract to Plaintiffs took effect and gave Plaintiffs a prior right in the contract, notwithstanding no notice of the assignment was given to Pease, till after the service upon him of the garnishee process.

We fully admit the principle that an assignee of a chose in action, takes it subject to all the equities between the original parties, and consequently, that if Mr. Pease had any equitable defence to said contract, or against the Railroad, the Plaintiffs would have been no better off than the Railroad, but we deny that he takes it subject to any equities or rights in a third person; and we deny that a creditor of the assignor who attaches a debt due the assignor after the assignment thereof by the assignor, but before the assignee may have given notice thereof to the debtor, acquires any right therein.

*Third.* As to the objection that Plaintiff's sale was invalid, we answer: The contract was mortgaged to Plaintiffs, and this action is equally sustainable in their character of mortgagees as of owners.

Further, that the Defendants do not object to the regularity of the sale, nor do they ask to be relieved from the sale and allowed to redeem. Thus, whether the sale was good or bad is immaterial in this case.

Smith & Gilman, Counsel for Appellants.

Wheeler H. Peckham, Counsel for Respondents.

*By the Court.*—ATWATER, J.—This was an an . action by Kneeland and Ludington (Plaintiffs below) to set aside a judgment recovered in the District Court of Ramsey County, in favor of the Defendants, MacDonald and Graham, against the Defendant, R. M. S. Pease, garnishee of the Minneapolis & Cedar Valley R. R. Company. The Defendants MacDonald and Graham had recovered a judgment against said company, for some $38,000, for work done in grading the road, and garnisheed the Defendant Pease, who was indebted to the Rail Road Company for 43 Minnesota State R. R. bonds; which indebtedness was to be discharged by returning the bonds, or paying their market value in currency. This indebtedness was evidenced by a written contract, which the Plaintiffs claimed to have purchased of the Company, previous to the service of the garnishee process on Pease, and they · allege that the judgment of MacDonald and Graham against Pease, was a cloud upon their title to the said contract, and that Pease on account thereof, refused to settle and account with them. The Plaintiffs alleged the consideration for the assignment of this contract to them by the Rail Road Company, was a loan to said .Company by the Plaintiffs of $5,000 and 17 Minnesota State seven per cent. bonds, which amount of money and bonds, the Plaintiffs allege were to be returned to them within thirty days from the 21st day of September, 1859 ; and that in default thereof, the Plaintiffs were authorized to sell the right and interest of the Company in the contract with Pease, and the bonds therein mentioned. The Defendants, MacDonald and Graham, answered, denying the allegations of the Plaintiffs as to their purchase and ownership of the contract, and alleged that if any such sale was made, it was made by Benjamin Pringle, without authority in fraud of the rights of the Defendants, and in collusion with the Plaintiffs.

The case was referred to James Gilfillan, Esq., who reported in favor of the Plaintiffs, and that the judgment in favor of MacDonald and Graham, be set aside as far as the rights of the Plaintiffs were concerned. The Defendants on a case made, appeal to this Court.

It appears from the report of the referee, that prior to May

44

5th, 1859, there had existed at St. Paul, a banking firm of Pease, Chalfant & Co., composed of the Defendants, Roger M. S. Pease, Richard H. Pease, Charles Hunt, Platt A. Paine, and one Jacob M. Chalfant. That prior to said day Roger M. S. Pease had made a contract with the Minneapolis and Cedar Valley Rail Road Company, in pursuance of which the Company had deposited with said firm, 43 Minnesota Rail Road bonds, and said Company was to have from said firm in relation to said bonds, the same contract afterwards made by R. M. S. Pease. The death of Jacob M. Chalfant, prior to May 5th, 1859, dissolved the firm, and prevented the execution of the contract. On the 5th day of May, 1859, it was agreed between R. M. S. Pease and the Rail Road Company, that the said Pease should execute the contract originally proposed between the firm aforesaid and the Company, and that it should be guaranteed by all the surviving members of the firm. A contract was accordingly drawn and executed by R. M. S. Pease, and guaranteed by R. M. S. Pease and Charles Hunt (being the only two members of the firm then in St. Paul,) and delivered to the Company It was at the same time agreed, that a duplicate of the contract should be drawn and signed by the members of the firm then present, and forwarded East for the signatures of R. H. Pease and Platt A. Paine, and that upon the delivery to the Company of the contract guaranteed by all the surviving members of the firm, the contract then delivered guaranteed by the two, should be given up and cancelled. On the 5th of June following, said contract, guaranteed by the four members of the firm, was delivered to the Company, "but said Company, through the inadvertence of its officers, neglected to redeliver to said Roger M. S. Pease, the said contract and guaranty delivered to it on the 5th day of May aforesaid." On the 21st of September following, the Company assigned this contract, (guaranteed by the two members of the firm,) to the Plaintiffs, as security for the money and bonds advanced by the Plaintiffs to the Company. The garnishee summons was served on Pease several days subsequent to this assignment.

The Appellants claim that the Plaintiffs took nothing by the assignment of this contract, inasmuch as it was then of

no force and effect—that it had discharged its office and was null and void. So far as the contract itself is concerned, I think this position is correct. The permanent contract which was agreed upon between the parties, was to have four guarantors, and the referee finds that the contract with two guarantors, "was then and there delivered by said Pease and Hunt to said Company, with the express understanding and agreement, that when the guaranty upon the duplicate sent East as aforesaid, should be signed by said other members of said late firm, and said duplicate delivered to said Company, the one delivered to said Company on the said 5th day of May, should be delivered by said company to said Pease, the one so delivered to said Company to be kept by it only until the said duplicate with said signatures should be delivered to it." In the face of this express agreement between the parties I do not see how it can be claimed with any show of reason, that the contract first delivered to the Company, had any force or effect, after the delivery of the second or substitute. The Company had no right to make any use of it whatever, and were violating their agreement in even retaining possession of it. Nor is it any answer to say that the guaranty is no part of the contract, and that the contract is the same whether guaranteed by two or four. It is enough to say that the parties themselves have a right to provide what the contract shall be, both in form and substance, and they have declared that the permanent contract with reference to these bonds, should have four guarantors, and that the temporary one with two, should be delivered to the obligors. As the Company therefore had no right by virtue of, or under this contract, they could convey none by an assignment of the same.

But the Company had rights in the bonds mentioned in the contract, and I think the language of the assignment is broad enough to convey the interest of the Company in those bonds to the Plaintiffs. The assignment is, first of a certain contract in writing (describing it) "together with all the interest of the said Company in the bonds mentioned in the contract or agreement, and the bonds therein mentioned"—and then goes on to assign the interest of the Company in twenty-five other

State bonds, with which the contract had nothing to do. It will thus be seen that the assignment purported to convey other interests beside the contract, and the intent of the Company to convey the bonds (or the interest of the Company in them,) is as clear as it is to convey their interest in other bonds not referred to in the contract. An assignment *inter alia* conveying a void contract evidencing a debt, would not vitiate or render nugatory that part of the instrument conveying the debt itself in apt and sufficient terms, and although the Plaintiffs could not acquire title to the bonds by virtue of the contract assigned, I see no reason why the interest of the Company in these bonds did not pass by reason of the assignment. In an action by the Company against Pease for these bonds or the avails thereof, on the contract held by it, this assignment of its interest would constitute a good defence.

It is claimed by the Appellants that the assignment to the Plaintiffs gave to them no rights of any kind, and was in no way binding upon the Railroad Company, for the reason that Benjamin Pringle, who transacted the business in the name and on behalf of the Company, had no valid authority to act, it not being in the power of the Directors of the Company to confer such authority upon him. Upon a careful examination of the pleadings I do not find that any such issue was made in the action, nor from the report of the referee or proceedings in the case does the point appear to have been made in the Court below. The answer, after denying the making of the promissory note by the Company, alleges that "if any such note was executed, it was made by Pringle, the President of said Railroad Company, but without the knowledge or authority of the Company, and without consideration, and to be used for the purpose of defrauding these Defendants," &c. Substantially the same averments are made with reference to the assignment of the contract by the Company to the Plaintiffs, from which it is apparent that the point now here raised was not litigated below. The issues of fact upon these allegations went to the merits of the action, and having been found against the Appellants, it would scarcely be in furtherance of justice to permit a technical objection of this kind to be here raised for the first time, even if well founded.

MacDonald & Graham, et als. v. Kneeland & Luddington.

Without intending distinctly to decide the point, I am strongly inclined to think that the Directors of the Company had power to authorize Pringle to do the acts alleged in the complaint.

R. M. S. Pease, having become insolvent, made an assignment to Lorenzo Allis, (the date of which does not appear,) and on the 28th of September, 1859, a garnishee summons, in favor of MacDonald and Graham, was served upon Pease and Allis. Before disclosure by them, Allis was verbally notified by Luddington that the Railroad Company had assigned to him all their right, title and interest in the contract between Pease and the Company. This fact, however, did not appear in the disclosure, and judgment was rendered against the garnishees for the forty-three bonds or their value. The question is thus presented as to which party has the better title to the bonds.

That an assignment of a debt or chose in action is valid and binding as between the assignor and assignee, without notice to the debtor, seems to be generally conceded. But the authorities are somewhat in conflict as to whether such an assignment will have preference over an attaching creditor without notice of the assignment. But the rule laid down in *Muir vs. Schenck*, 3 *Hill, p.* 228, I think best supported by reason and authority, which is, that "as between different assignees of a chose in action, by express assignment from the same person, the one prior in point of time will be protected, though he have given no notice to either the subsequent assignee or the debtor." And the decision in that case seems to be based upon the rule laid down by Lord Thurlow in *Davis vs. Austin*, 1 *Ves. Jun.* 247, that "a purchaser of a chose in action must always abide by the case of the person from whom he buys. That I take to be an universal rule." In *Robinson vs. Weeks*, 6 *How. R.* 161, the Court say—"the assignment carried the whole title to the subject matter of the action, and of course the judgment when perfected. As between the parties to the assignment, clearly the whole right passed to the assignee—nor was any notice to the Defendant necessary except for the purpose of protecting the assignee against the acts of the assignor." And in the case of *Muir vs. Schenck*, it was held that "this question between a

previous assignee and a subsequent attaching creditor, was considered the same in principle as that between conflicting assignees." And to the same effect is *Wood vs. Partrigde,* 11 *Mass.* 488. So far, therefore, as these cases are authority, the case at bar falls within the rule.

But the cases on this subject are reviewed in a very able and elaborate opinion by Denio, Justice, in a late case in the Court of Appeals of the State of New York, that of *Bush vs. Lathrop,* 22 *N. Y.* 535, in which *Muir vs. Schenck,* above cited, is approved of, as well as the rule laid down in 1 *Vesey,* 247, " that a purchaser of a chose in action must always abide by the case of the person from whom he buys." " The rule as thus stated," say the Court, " is the only logical one. In the transmission of property, of any kind, from one person to another, the former owner can, in reason, only transfer what he himself has to part with, and the other can only take what is thus transferred to him. The cases in which, from motives of policy, to promote the currency of certain securities, to prevent fraud, or to aid the vigilant against the careless, the party to whom the transfer is made is allowed to claim a greater interest than was possessed by the other, are exceptional; and it is for a party claiming the protection of an exception to show that it exists in the particular case." Our Statute has made an exception to the rule in the case of transfers of real estate by instruments entitled to record, but I am not aware of any other which it has created.

The same doctrine as that held in the cases above cited is asserted in *Dix vs. Cobb and Whitney,* 4 *Mass.* 508, in which Parsons, C. J., says—" Although the trustee in this case had no notice of the assignment until after he was sued as trustee, yet immediately on the assignment the equitable interest in the debt, as between the parties to it, immediately passed to the assignee. And if the assignor had afterward received the debt, he would be obliged to pay over to the assignee. But an attaching creditor cannot stand on a better footing than his debtor, (if the assignment be not fraudulent as to creditors,) and if he attaches any property of the debtor, it must be attached subject to all lawfully existing liens created by his debtor; and consequently if the debtor have no equitable

interest in a chose in action, the creditor cannot acquire any by his attachment. Therefore the want of notice in the trustee will not defeat the assignee's interest in this debt in favor of an attaching creditor. Other cases might be cited, supporting the same doctrine, but many of them are quoted and commented on in the cases above referred to.

The other Massachusetts authorities, cited by the counsel for the Appellants, we do not understand hold a different doctrine from this, but were decided on points not here in issue. In *Foster vs. Sinkler, et al*, 4 *Mass.* 450, Thompson, the maker of two non-negotiable promissory notes, was held as trustee of the payee, on the ground that there was no sufficient evidence of a *bona fide* assignment of the notes. In *Comstock vs. Farnum, et al*, 2 *Mass.* 96, the only point decided was, that "evidence collateral to the answer of a trustee, under the Statute of February 28, 1795, respecting absconding debtors, is not to be admitted." *Hull vs. Blake*, 13 *Mass.* 153, was assumpsit by the endorsee against the maker of two promissory notes, both made in Georgia, and Defendant pleaded a judgment rendered against him as garnishee of Billings, the payee of the notes, by a Court of competent jurisdiction in the State of Georgia. The plea was held good, the Court saying that, "if by the laws of the State of Georgia, in force when these notes were given, they might be discharged by a payment to the original promisee after they were endorsed, and such a payment had been actually made, proof of these facts would secure the Defendant from a second payment," &c.; though the Court say, "such a provision would be extraordinary, and contrary to the effect generally given to negotiable securities in any mercantile community." If that case can be considered as having any bearing on the rights of an assignee of a chose in action, it is only on account of a Statute giving an extraordinary privilege to the creditor.

In *Wood vs. Partridge*, 11 *Mass.* 488, the debtor was held as trustee of the assignor. But it was on the ground that the debtor had not been furnished with sufficient evidence to constitute legal proof that the debt had been assigned, and not on the ground that an assignment without notice is invalid. Where a garnishee has been held on his disclosure, it ought

to constitute a good bar to another recovery for the same cause of action against him, so long as the judgment stands. And were the Plaintiffs here seeking a judgment against Pease simply, without setting aside that of the Appellants against him, that judgment would have constituted a good plea in bar. The 13th *Illinois*, 486, holds that an assignee of a chose in action takes it subject to all the equities between the orignal parties. An examination of the case of *Holmes vs. Remsen*, 4 *John. Ch.* 460, will show that no question there decided is applicable to the case at bar. And in *Milliken vs. Loring*, 37 *Maine*, 408, it was held that if one summoned as trustee is notified that the debt by him owing has been assigned to a third person, and neglects to disclose such assignment, the trustee judgment and payment of it on a legal demand, furnish to him no protection against the claims of the assignee.

It is true that it is stated in *Drake on Attachments sec.*, 607, that if a debtor be summoned as garnishee of his creditor, and have received no notice of an assignment of his debt, a judgment rendered against him will protect him from subsequent liability to an assignee. But that the application of this rule is intended to be carried only so far as may be necessary to protect the debtor, is I think manifest, since in the section next subsequent to that above quoted, the rule is stated, that "an assignment of a debt will protect the rights of the assignee from a subsequent attachment against the assignor, though notice may have been given to the debtor before the attachment, if it be given in time to enable him to take advantage of it before judgment against him as garnishee." In a note to this text, the author cites among other authorities, 4 *Mass.* 508, and 3 *Hill* 228, and observes: "that the doctrine stated in the text, is correct, cannot I think be reasonably doubted, but in Connecticut and Vermont it is held, that an attachment of a debt made before notice of its assignment, will prevail against the assignment, though notice be given to the debtor before judgment against him as garnishee;"—citing on the same, 5 *Day* 534; 10 *Conn.* 444; 14 *Conn.* 141; 25 *Vermont* 593; also cited by Appellant's counsel. The author here admits the doctrine stated in *Muir*

*vs. Schenck* to be correct, but that the Courts of Connecticut and Vermont, have, to some extent at least, adopted a different rule. I have not had access to all these authorities and do not deem it necessary to examine them at length, as if they hold that an attaching creditor, by virtue of his attachment, obtains a better title to a debt or chose in action, than a previous assignee without notice to the debtor, I do not think the doctrine supported by sound reason or the weight of authority.

We hold then the correct rule to be, that a party making an absolute assignment of a chose in action, parts with all his interest in the same, and a subsequent attaching creditor or assignee, can acquire no interest therein. That if the debtor pays to the assignor, without notice of the assignment, the latter will be held to have received the same · as trustee for the assignee, and that even a judgment obtained against the debtor as garnishee (before payment) will not defeat the rights of the assignee, at least where the facts proved in an action brought to set aside the judgment, disclose superior equities in the assignee. The facts here found show that the Plaintiffs loaned their money on the faith of this specific property, while the appellants were only general creditors of the Company, and their debt was contracted and position fixed, without any reference to, or at least, any claim upon the bonds now sought to be obtained. It would scarcely comport with equity and good conscience, for the Court to postpone the prior equitable and specific lien of the Plaintiffs, to the subsequently acquired rights of the appellants to this property.

The counsel for the respondents urges that this assignment vested the legal estate of the subject matter assigned, in the assignees, and that this fact leaves no question as to their rights, however they might have stood under the old practice. We think this position is not tenable. The code has very wisely dispensed with the absurdity of requiring the assignee to use the name of the assignor in bringing suit, but it does not *therefore* follow that the legal estate in the thing assigned passes to the assignee; on the contrary, the only object of this provision of the Code, seems to have been to assimilate

45

the practice in Courts of Law to that which always prevails in Courts of Equity in permitting the real party in interest to sue in his own name. The interest or right acquired under the assignment is an equitable one, and governed by the same principles which Courts of Equity have always been wont to apply in like cases.

It is further urged by the Appellants, that there has been no valid sale of the indebtedness from Pease to the Rail Road Company under the assignment to Plaintiffs. That assignment provided that on default in payment of the note given to Plaintiffs, or in the delivery of the eleven State bonds, "then it shall be lawful for said Kneeland and Ludington, and they are hereby authorized and empowered to sell the property and interests hereby assigned or intended so to be, at public or private sale, at the city of Milwaukee, on giving to the President of said Company ten days notice of the time and place of such sale." It appears that this notice was the only condition imposed upon the Plaintiffs with reference to the sale, and it also appears in evidence that this notice was given.

We are cited to *Newbould vs. Wheeler* 16 *N. Y.* 392, as an authority showing the invalidity of this sale. That case holds that "the pledge of commercial paper as security for a loan of money, does not, in the absence of a special power for that purpose, authorize the pledgee upon the non-payment of the debt, and upon notice to the pledgor, to sell the securities either at public or private sale, but he is bound to hold and collect the same, as they become due, and apply the money to the payment of the loan." From this statement from the syllabus, it will be remarked that a wide difference exists between that case and the one at bar. The debt here assigned, was not in the form of *commercial paper*, and there was an *express agreement* on the part of the Company, that the assignees might sell the same either at public or private sale, and the only notice required was one of ten days to the President of the Company. But in the view taken by the Court of the rights of the Plaintiffs under this assignment, an irregularity in the sale would not divest their equitable lien upon the property, and at most, the Court would only order a re-sale, where it clearly appeared that such course would

be in furtherance of justice, and in conformity with the relief demanded. But the Appellants do not ask such relief, nor claim that their rights have been prejudiced by reason of any irregularities connected with the sale, and consequently are not in a position to urge the objection that the Plaintiffs took nothing under the sale.

The order of the Court below denying a new trial is affirmed.