## C. R. HUNT, Appellant, v. WM. HOPLEY.

School Funds: DEPOSIT IN BANK: GUARANTY OF REPAYMENT. VALIDITY. A school township treasurer may rightfully make a general deposit of the funds of his district in a solvent bank in his name as such treasurer, and the title to the fund will not thereby pass to the bank nor does it amount to a conversion; and any guaranty which the bank may give to secure him against loss in case of its failure is not invalid, either on the ground that the deposit was wrongful or as against public policy.

*Appeal from Cass District Court.*—HON. W. R. GREEN, Judge.

TUESDAY, MAY 26, 1903.

THE plaintiff alleged that his term of office as school treasurer was about to expire, and A. W. Dickerson, then the cashier of the Cass County Bank, inquired of the plaintiff if he would be re-elected as his own successor as school treasurer, and plaintiff then informed said Dickerson that if he was re-elected he would remove the school funds from said Cass County Bank unless he was indemnified against loss; that thereafter he was re-elected as such school treasurer, and then demanded that the Cass County Bank give him some indemnity against loss, or he would demand and take the funds of the school district away from the said bank; that thereupon the said Dickerson inquired if a written indemnity signed by Isaac Dickerson, J. C. Yetzer, and William Hopley would be sufficient, and if it would satisfy the plaintiff to leave the said funds then in the bank, and further deposit such additional sums of school funds as might come into his possession as such treasurer; that the plaintiff informed said Dickerson that he would accept the indemnity, and thereupon a written contract in words following was executed    "Atlantic, Iowa, October 23, 1893.    We hereby guarantee C. R. Hunt, Treas. Washington Township, Cass County, Iowa, from any loss that he may incur by reason of depositing money with the Cass County Bank of Atlantic, Iowa. Isaac Dickerson. William Hopley, J. C. Yetzer." The guaranty was accepted by plaintiff, and in reliance thereon the funds already in the bank left there, and additional funds deposited. "All the said funds were deposited in the said bank in the name of the plaintiff as treasurer of said district township, and not in his individual name. That no other funds were commingled therewith in making

the said deposits, and all of the said funds were the prop-
erty of the said district township. That the said bank
received and retained all of the benefit arising out of the
deposit of said school funds therein, as contemplated in
the execution and delivery of the said bond or written
guaranty for the purpose of keeping the said funds then
on deposit therein, and the deposit of all future sums com-
ing into the hands and possession of the plaintiff as such
school treasurer, and that the plaintiff has performed his
part of the said contract and agreement, by the deposit in
said bank of all the school funds which came into his hands
prior to the said failure of the said bank, and by leaving
on deposit therein the funds already deposited by him in
the said bank at the date of the said bond or written guar-
anty." The bank failed, and part of the moneys so
deposited was lost, which plaintiff has made good to the
district, and now demands recovery on the guaranty.
There were some other allegations in the petition, not
necessary to set out. The defendant's demurrer, to the
effect that the deposit was wrongful, and that the taking
of security to indemnify an officer against loss which may
result from his wrongful act is against public policy, was
sustained. Plaintiff elected to stand on the ruling, the
petition was dismissed, and he appeals.—*Reversed.*

*DeLano & Meredith* for appellant.

*Swan & Bruce* for appellee.

LADD, J.—The defendants' guaranty was against any
loss plaintiff, as school treasurer, might incur by reason of
depositing money with the Cass County Bank. If he had
the right to so deposit the public money, the instrument
is valid. The contention of appellee is that the law
forbids such an officer from making a general deposit of
public money, even though in his name as such, for the
reason that thereby the title to the fund passes to the

bank, and a technical conversion results, and that any contract having a tendency to induce an officer to swerve from the line of duty is, of necessity, inimical to the principles of sound public policy. Were this position correct, it would be a matter of profound regret, for nearly every county, city, and school district treasurer in the state has interpreted the law otherwise, and, according to this view, placed the funds of the public in jeopardy, and exposed himself to criminal prosecution. For, if depositing with a bank for safe keeping amounts to conversion, they would seem to be open to the charge of embezzlement, and might have difficulty in regaining the moneys from the depositories participating in the wrong by receiving the funds. Common prudence seems generally to have dictated the deposit of public moneys with solvent banking corporations for safe keeping. To require the officer to retain these in his personal custody would impose an exceedingly onerous burden, so out of keeping with what is deemed essential for the safety of the funds that one so proposing would experience difficulty in procuring sureties on his official bond. We have discovered nothing in the statutes of this state forbidding the deposits in solvent banks by school treasurers. The only section which might be so construed is section 1747 of the Code of 1873, providing that "he [the treasurer] shall hold all moneys belonging to the district and pay out the same on the order of the president, countersigned by the secretary." But "hold," as there used, ought not to be construed as exacting the physical retention of the money. All intended is that the officer retain control, and keep it subject to the payment of orders when properly signed. That is precisely what is done with money deposited. It cannot again be regained in kind, nor is this essential. Its equivalent answers every purpose, and this is returned on demand. The transaction differs essentially from a loan. That is for the benefit of the borrower, while a deposit is for the benefit of the

depositor. The depositary may obtain an incidental advantage, but that is seldom the original object contemplated. In a loan the borrower promises to return the money at a future time; in a deposit, whenever the money is demanded. True, the technical relation of creditor and debtor springs from the making of deposits, but few of the many people who daily leave money with banks for safe keeping, and exact the return of an equivalent amount, ever think of the transaction as a loan, or ever speak of it as such. In *Independent School District of Sioux City v. Hubbard*, 110 Iowa, 58, the settlement of the treasurer with the board of directors was involved; and, with respect to certificates of deposit actually representing money payable on demand, this court said: "We are of opinion that, if certificates actually represented cash within the control of the treasurer, which could and would have been produced had the board of directors so demanded, they should be treated as money in a suit on the official bond. To hold otherwise would ignore business usages, and give undeserved importance to an irregularity which could not have affected the rights of any one concerned."

The distinction between a deposit and a loan is illustrated in that case, for, while demand certificates of deposit on solvent banks were treated as equivalent to cash, time certificates bearing interest were denounced as private loans of public money, amounting to conversion. In *Law's Estate*, 144 Pa. 499 (22 Atl. Rep. 831, 14 L. R. A. 103), the difference was pointed out: "deposit is where a sum of money is left with a banker for safe keeping, subject to order, and payable, not in the specific money deposited, but in an equal sum. It may or it may not bear interest, according to the agreement. While the relation between the depositor and his banker is that of debtor and creditor, simply, the transaction cannot, in any proper sense, be regarded as a loan, unless the money is left, not

for safe keeping, but for a fixed period, at interest, in which case the transaction assumes the characteristics of a loan." The Supreme Court of Wisconsin applied the same principle in *State v. McFetridge*, 84 Wis. 473 (54 N. W. Rep. 1, 998, 20 L. R. A. 223), in adjudging general deposits not investments, within the meaning of the statute of that state forbidding such by the state treasurer, saying: "By such deposit the depositor does not lose control of the money, but may reclaim it at any time. True, he loses control of the specific coin or currency deposited, but not of an equal amount of coin or currency having the same qualities and value, which, as we have seen, is all that is required of him. But if funds in the treasury are invested in United States or state bonds, or in loans on time to counties, cities, etc., the treasurer loses control thereof; and the same cannot be replaced in the treasury until the bonds are paid or sold, or such loans become due, and are collected by due course of law. The retention by the treasurer of substantial control over the funds in the one case, and his loss of such control in the other, make the leading distinction between a mere deposit of the funds and an 'investment' thereof, as those terms are used in the statutes." See, also, opinion by Post, C. J., in *State v. Hill,* 47 Neb. 456 (66 N. W. Rep. 554); *City of Lansing v. Wood*, 57 Mich. 201 (23 N. W. Rep. 769); *Allibone v. Ames*, 9 S. D. 74 (68 N. W. Rep. 156, 33 L. R. A. 585); *Norwood v. Harness*, 98 Ind. 134 (49 Am. Rep. 739).

A trustee may take the precaution of leaving the trust funds with a bank for preservation, *Officer v. Officer*, 120 Iowa, 389, and we can see no reason for denying a school treasurer the right to equal protection in placing the moneys of his district within the safe keeping of a solvent bank, also. Under the prior decisions of this court he is, because of the conditions of his bond, practically an insurer of the safety of the public revenues coming into his hands. *District Tp. v. Morton*, 37 Iowa, 551; *District*

*Tp. v. Smith*, 39 Iowa, 10; *District Tp. v. Hardinbrook*, 40 Iowa, 130. He is not furnished with a vault or other suitable receptacle, and it is well recognized that a special is not as safe as a general deposit. Must he, at his peril, carry the large sums of public money coming into his keeping on his person, or stow them away at his home or place of business, thereby taking risks of loss, destruction, or larceny, not to be thought of in the care of his own property? A number of courts apply precisely the same rules with respect to public officers as to trustees, and not only hold that they may make general deposits of public moneys coming into their hands, but are liable in event of loss only when failing to exercise due care and diligence. *Wilson v. People of Colorado*, 19 Colo. 199 (34 Pac. Rep. 944, 22 L. R. A. 449, 41 Am. St. Rep. 243); *York County v. Watson*, 15 S. C. 1 (40 Am. Rep. 675); see 23 Am. & Eng. Ency. of law, (2d Ed.) 374. The liability of the officer, however, is to be controlled by the conditions entering into his bond. *Ross v. Hatch*, 5 Iowa, 149. And even where held to be absolutely liable, he is accorded the right of placing public funds coming into his hands in a solvent bank for safe keeping. *State v. McFetridge*, 84 Wis. 473 (54 N. W. Rep. 1, 998, 20 L. R. A. 223); *State v. Hill*, 47 Neb. 456 (66 N. W. Rep. 554); *Allibone v. Ames*, 9 S. D. 74 (68 N. W. Rep. 165, 33 L. R. A. 585). This is on the ground that in so doing it does not pass beyond his control. While not in his physical possession, it is accessible upon demand, and hence the making of such deposits is not regarded as a conversion of the funds. True, language inconsistent with this view may be found in several of our previous decisions. Thus in *Independent Dist. of Boyer v. King*, 80 Iowa, 497, the making of a deposit is said to be a loan, but the question was not there involved. Wilson, the treasurer of the district, had deposited the public money to his individual credit; and the issues were whether this act was wrongful, and whether the claim of the district

might be established as preferred without tracing the identical money deposited by him. It was clearly an appropriation of the money, and the fact that the bank was informed of the fact made no difference. *Long v. Emsley*, 57 Iowa, 11. Decisions are numerous to the effect that a deposit by a trustee in his individual capacity is a conversion. See *Officer v. Officer*, supra; and in *Williams v. Williams*, 55 Wis. 300 (12 N. W. Rep. 465, 13 N. W. Rep. 274, 42 Am. Rep. 708), it was declared immaterial whether the officers were informed at the time that the funds were trust funds. In *Naltner v. Dolan*, 108 Ind. 500 (8 N. E. Rep. 289, 58 Am. Rep. 61), the only way of escaping liability was pointed out to be the depositing of the trust property, either in the *cestui que* trust's name, or in some way distinguishing it as such on the books of the bank. It must not be made in the name of the trustee individually, else he will become individually liable upon the bank's failure. *Jenkins v. Walter*, 29 Am. Dec. 539; *Com. v. McAlister*, 28 Pa. 480; *Summers v. Reynolds*, 95 N. C. 404. In *Independent Dist v. Hubbard*, supra, the question was whether money should be produced by the treasurer in making his annual settlements; and, in holding that it should, it was remarked that he had no right to make deposits. But what was meant by "money," as there used, was not defined, and later in the same opinion the legality of a general deposit was recognized. In none of these decisions was the point under consideration necessarily involved. But in *Lowry v. Polk County*, 51 Iowa, 50—an action by a county treasurer to recover money of the county, lost through the failure of a bank in which it was deposited—the court rests its decision squarely upon the proposition that a general deposit is a loan, was prohibited by section 912 of the Code of 1873, forbidding the county treasurer from "loaning out" county funds in their hands, and amounted to a conversion to his own use. If that decision is to be adhered to, then the hundreds of public

officials of this state who have placed the moneys coming into their hands as such in the solvent banks of the state for safe keeping, in pursuance of a custom prevailing since the formation of this commonwealth, and in harmony with business usages of the commercial world, must be denounced as embezzlers, for section 4840 of the Code declares that "if any state, county, township, school or municipal officer, or officer of any state institution * * * loans without authority any portion of the public money entrusted to him for collection, safekeeping, transfer or disbursement or converts to his own use any money or property that may come into his hands by virtue of his office he shall be guilty of embezzlement." We are not ready to so declare. Better that *Lowry v. Polk Co.* in so far as holding the general deposit of money a loan, be overruled. It has been disregarded, because of business necessity and prudence, ever since announced. It is unsound in principle and contrary to authority.

In the instant case the deposits were made in the name of the treasurer of the district, as such. No time of credit was given. He did not lose control, for at any moment payment might have been exacted. The bank, as appears from the petition, was then supposed to be' reputable, but he took the additional precaution of requiring a guaranty of its solvency and fidelity; thereby providing indemnity against possible loss for the district as well as himself. This he had the right to do, and may recover on such security.—REVERSED.