136 454
e142 485
142 486
e142 487

BOARD OF EDUCATION OF DETROIT *v.* UNION TRUST CO.

Public Moneys—Bank Deposits—Trust Funds—Insolvency—
Preferences.

Where money belonging to a board of education and a library commission was deposited to their credit, with their knowledge and consent, in a bank whose cashier was their treasurer, with the expectation by the board and commission that interest should be allowed on daily balances, the fact that such treasurer was also cashier did not convert the deposit into a trust fund, so as to entitle them to a preference on the failure of the bank, by virtue of 1 Comp. Laws, § 1197 *et seq.*, prohibiting public officials from commingling public funds with their own. *Board of Fire & Water Com'rs of Marquette* v. *Wilkinson*, 119 Mich. 655, distinguished.

Appeal from Wayne; Donovan, J. Submitted April 8, 1904. (Docket No. 28.) Decided April 26, 1904.

Petitions by the board of education of the city of Detroit and the Detroit Library Commission against the Union Trust Company, as receiver of the City Savings Bank, to have certain deposits declared to be held in trust. From a decree dismissing the petitions, petitioners appeal. Affirmed.

*Timothy E. Tarsney*, for petitioners.

*Bowen, Douglas, Whiting & Murfin*, for defendant.

Montgomery, J. The defendant bank closed its doors on the 10th of February, 1902, and the board of education at that time had on deposit, credited to the several funds of the board, $464,000. There was to the credit of the library commission $38,551.60. Henry R. Andrews was the treasurer of the board of education and *ex officio* treasurer of the Detroit Library Commission. The moneys were deposited in the bank with the knowledge of the

board of education, the deposits being made at times by the secretary and at times through Andrews as treasurer, but in all cases with an expectation on the part of the board that there should be interest allowed on daily balances of 2½ per cent. This course had been pursued by the board for more than one year under Andrews as treasurer, and for a much longer period with his predecessors. The finance committee of the board examined the books, papers, and vouchers of the secretary, and also the treasurer's vouchers, every three months, and were acquainted with the fact that these funds were deposited in the bank, and that the interest was being credited thereon. The library commission was also cognizant of the fact that these funds were deposited in the bank, and that interest was being credited thereon. The petitioners claim that the funds of the board of education and the library commission constitute special deposits, and became impressed, upon being deposited, with a trust in favor of petitioners, and that this trust may be impressed upon any assets of the bank at the time of the failure, or at least upon the cash on hand and the cash items.

The question of first importance is whether these funds so deposited are to be treated as trust funds in the first instance. Counsel for petitioners relies upon Act No. 131, Pub. Acts 1875 (1 Comp. Laws, § 1197 *et seq.*), the provisions of which, so far as they relate to the questions involved here, are as follows:

"SEC. 2. It shall be the duty of every officer charged with the receiving, keeping, or disbursing of public moneys to keep the same separate and apart from his own money, and he shall not commingle the same with his own money, nor with the money of any other person, firm, or corporation.

"SEC. 3. No such officer shall, under any pretext, use nor allow to be used any such moneys for any purpose other than in accordance with the provisions of law; nor shall he use the same for his own private use, nor loan the same to any person, firm, or corporation without legal authority so to do.

"Sec. 4. In all cases where public moneys are authorized to be deposited in any bank, or to be loaned to any individual, firm, or corporation, for interest, the interest accruing upon such public moneys shall belong to and constitute a general fund of the State, county, or other public or municipal corporation, as the case may be."

It is contended by counsel that as Andrews, the treasurer, was cashier of the bank, the question is ruled by *Board of Fire & Water Com'rs of Marquette* v. *Wilkinson*, 119 Mich. 655 (78 N. W. 893, 44 L. R. A. 493). In that case Wilkinson, who was treasurer of the board, was also the banker, and it was held that this act (No. 131) prohibited him from commingling the funds with his personal funds. It was further said that, if section 424[1] (section 2) be construed liberally, and if the court should say "that it was not designed to prohibit a treasurer from depositing his funds in a bank in the ordinary way, we should be required to except deposits in banks in which he has a pecuniary interest. The deposit with Campbell & Wilkinson was in violation of this law, and no order of the board could make it lawful. Still more clearly improper was the practice adopted by Wilkinson of using this fund with his own money in his own banking business. This was a trust fund, as much as though Wilkinson had been a farmer, or broker, or contractor, or merchant, and had used the fund in his business."

The present case is clearly distinguishable from the *Wilkinson Case*. The record does not disclose that Andrews, the treasurer, was even a stockholder in the bank. It is true he occupied the position of cashier, but that he profited in any way by the deposit of the money in the bank does not appear. Certainly the bank was a distinct legal entity; and, if section 4 is to be construed as authorizing the board of education and the library commission to legalize deposits in the bank in the regular way in consideration of interest payments thereon, it must be assumed that such deposits are subject to the incidents of all depos-

[1] How. Stat.

its upon interest. It would be doing violence to all experience to say that it was intended that the bank should keep this fund intact as a special deposit, and at the same time pay interest thereon to the depositor. In this respect the case is not unlike that of *Retan* v. *Union Trust Co.,* 134 Mich. 1 (95 N. W. 1006).

Was the treasurer authorized to make this deposit on interest? As before stated, in some cases the deposits were made by the secretary without the intervention of the cashier at all. The accounts in the bank were kept with the school board. Both petitioners took the benefit of credits of interest from time to time upon these deposits, and, while formal action authorizing deposit at the bank is not shown, reports from time to time were made to the boards, and they had full knowledge of the fact that the funds were deposited as a general deposit. More than this, it can be said that the consideration upon which Andrews was named as treasurer was that the fund should be deposited in this very bank upon interest. It may be a hardship that these public funds should suffer a loss, but it is evident that two policies were open,—the one to preserve the funds intact by placing them in the hands of the treasurer; the other to increase the funds by securing interest thereon, relying upon the treasurer's bond to make good any deficit. We cannot escape the conclusion that both the library commission and the board of education pursued the latter course, and that these funds became a general deposit, subject to the risks incident to an ordinary deposit in the bank.

The order of the circuit judge denying the prayer of the petitioners will be affirmed.

Moore, C. J., and Carpenter, J., concurred. Grant and Hooker, JJ., did not sit.