## CITY OF CLOQUET v. NORTHWESTERN STATE BANK AND A. J. VEIGEL.[1]

August 12, 1927.

No. 26,193.

**City's overdeposit in depository bank not provable as preferred claim against insolvent bank.**

Where a city treasurer has made deposits in a duly designated depository bank in excess of the collateral securities given by the bank in lieu of a depository bond, under L. 1925, c. 173, and the bank thereafter becomes insolvent, the city may not claim such overdeposit as a preferred claim, for the overdeposit was not forbidden or criminal, since it does not appear that any other depository bank had been designated where the treasurer might deposit such funds, or that the bank was not considered solvent when such overdeposits were made.

Banks and Banking, 7 C. J. p. 749 n. 58.

See note in 5 L.R.A.(N.S.) 886; 16 L.R.A.(N.S.) 918; L. R. A. 1917A, 683; 22 R. C. L. pp. 230, 231; 5 R. C. L. Supp. 1198.

Defendants appealed from an order of the district court for Carlton county, Grannis, J., overruling their separate demurrers to the complaint. Reversed.

*Clifford L. Hilton*, Attorney General, *William H. Gurnee*, Assistant Attorney General, and *Hayner N. Larson*, for appellants.

*Frank Yetka*, City Attorney, and *Hanford F. Cox*, for respondent.

Holt, J.

Demurrers to the complaint were overruled; in so doing the court certified the questions presented to be important and doubtful. Defendants appeal.

The substance of the complaint may be stated thus: Prior to 1925, the defendant bank had been and during that year was a duly designated depository for the funds of plaintiff; that in July, 1925,

[1]Reported in 215 N. W. 174.

the bank deposited $35,000 in liberty bonds with the city treasurer in lieu of surety bonds, pursuant to the provisions of L. 1925, p. 168, c. 173; that on September 13, 1926, the defendant commissioner of banks took possession of the property and business of the bank for the purpose of liquidation, at which time plaintiff had $48,347.57 on deposit therein; that in the liquidation proceeding plaintiff filed its claim with the commissioner as a preferred claim; that the commissioner allowed it in full as a general claim, but refused to accord it preference or recognize it as a trust fund, whereupon the court is asked to grant plaintiff permission to sell the liberty bonds and apply the proceeds upon said claim, and to have the balance ordered paid as a preferred claim.

Defendants concede the right of plaintiff to sell the bonds and apply the proceeds on the claim filed. The controversy relates solely to the question whether the balance is to be treated and allowed as a preferred claim against the assets of the bank.

In L. 1925, p. 168, c. 173, the law which permits depository banks to substitute current securities for the statutory surety bonds is found this sentence:

"At no time shall the treasurer maintain a deposit in any depository against collateral in excess of ninety per cent of the market value thereof."

Because of that sentence plaintiff asserts that all overdeposits are unlawful and subject the official to prosecution under G. S. 1923, § 10303. Hence, when, as here, both the treasurer and the bank knew the moment the limit was reached, all funds thereafter deposited being so deposited and received unlawfully became ex maleficio trust funds, and could be claimed as such by the city at any time in whosoever hands the assets of the bank might be. In State v. Midland State Bank, 52 Neb. 1, 3, 71 N. W. 1011, 66 A. S. R. 484, the court said:

"It has been many times held that when, except as specially authorized by statute, a treasurer, or other custodian of public money, makes a general deposit thereof in his own name, a trust results in favor of the beneficial owner, and that upon the in-

solvency of the bank receiving such funds with notice of their character, its estate is chargeable with the full amount of the deposit to the prejudice of nonpreferred creditors."

So also where the law makes an unauthorized deposit of public money a crime, or, as in some states, a statute prescribes that public moneys shall be deposited in banks as a special deposit only, it has been held that the custodian of public funds cannot make a general deposit of them in a bank, but they remain trust funds recoverable as preferred claims out of the assets of the bank in case of insolvency. Pinal County v. Hammons (Ariz.) 243 P. 919; Fidelity State Bank v. North Fork Highway Dist. 35 Idaho, 797, 209 P. 449, 31 A. L. R. 781; Bank of Commerce v. Clark, 114 Miss. 850, 75 So. 595; Yellowstone County v. First Tr. & Sav. Bank, 46 Mont. 439, 128 P. 596; Grand Forks County v. Baird (N. D.) 209 N. W. 782; Watts v. Board of Co. Commrs. 21 Okl. 231, 95 P. 771, 16 L.R.A. (N.S.) 918.

But a study of our statutes leads to the conclusion that the complaint does not present a preferred claim. There is no allegation of any cash on hand when the bank was taken over by the commissioner. That may, however, be remedied on repleading. By specifically giving the state a preference in case of insolvency of a bank and saying nothing as to the claim of a county, city or other municipality, the law of this state indicates, if anything, a purpose to let the latter come in as general creditors. G. S. 1923, § 106. See also § 12, art. 9, of the state constitution.

Nor do we think the criminal statute relied on, G. S. 1923, § 10303, makes it a crime for a city treasurer to deposit city funds in his hands in a bank after the designated depository bank has received deposits to the authorized limit. Whether in designating a depository bank the city council of plaintiff acted under §§ 1327-1330 or § 1841, G. S. 1923, those sections are intended not only to safeguard public funds, but also to secure for the city interest on idle funds, and to relieve the treasurer and his bondsmen from liability for money so deposited. There is no statute which forbids the treasurer from depositing funds in his hands in a bank for safe-

keeping when no depository bank has been designated or, which is the same thing, when the one designated has received the limit, measured by the amount of the surety bond or collateral securities deposited. In fact the language of § 1328 is not mandatory; it directs a treasurer to "keep the funds of such city as far as possible in the depositories so designated." There is no allegation that the city council had designated any other bank than the defendant bank where the treasurer could deposit city funds in case more accumulated than protected by the liberty bonds held as collateral, nor that when the overdeposits were made in defendant bank it was not considered solvent. So the treasurer was free to deposit the money for safe-keeping with whatever bank he might select, but as to such money he was not relieved of personal responsibility under the sections cited.

We think Phillips v. Yates Center Nat. Bank, 98 Kan. 383, 158 P. 23, L. R. A. 1917A, 680; Hunt v. Hopley, 120 Iowa, 695, 95 N. W. 205; Brown v. Sheldon State Bank, 139 Iowa, 83, 117 N. W. 289; Board of Education v. Union Tr. Co. 136 Mich. 454, 99 N. W. 373; City of Sturgis v. Meade County Bank, 38 S. D. 317, 161 N. W. 327, and cases therein cited, are authority for the proposition that the deposit here was a general deposit and that the city may not, upon the averments of the complaint, claim a preference over the general creditors of the bank. Another question might have been presented had it appeared that other depositories had been duly designated when the overdeposits in this bank were made, but such is not the case. Hunt v. Hopley, 120 Iowa, 695, 95 N. W. 205, goes into the reasons for not readily holding that a treasurer of a municipality is forbidden to resort to banks for depositing funds intrusted to his keeping.

We are of the opinion that the demurrer should have been sustained.

Order reversed.