G. A. RIEN, TRUSTEE IN RE TRUST FOR DEPOSITORS OF
FIRST STATE BANK OF SAUK CENTRE, v.
J. F. COOPER AND OTHERS.
IDA WICKLUND v. SAME.[1]

January 9, 1942.

Nos. 32,714, 32,715.

[1]Reported in 1 N. W. (2d) 847.

*Patrick J. Ryan* and *Thomas R. Walenta,* for appellants.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *Robert E. Leach,* for respondents except George Susens.

*Fowler, Youngquist, Furber, Taney & Johnson* and *Ralph H. Comaford,* for respondent George Susens.

PETERSON, JUSTICE.

In each of the two cases here for review the complaint attempts to set forth a cause of action for fraud. As to the fraud alleged, the complaints are the same.

It is alleged that the First State Bank of Sauk Centre was in process of reorganization under L. 1933, c. 55. The statute authorizes the reorganization of state banks without ceasing business under the direction of the commissioner of banks. Among other things the statute provides that the reorganization shall be in accordance with a written plan approved in writing by the commissioner of banks and by the owners of not less than 66 2/3 per cent of the total amount of deposits of, or unsecured liquidated claims against, the bank after deducting therefrom certain specified

deposits and claims, including "deposits * * * of the State of Minnesota, and of the counties, cities, villages, boroughs, townships and school districts of said state."

Such a plan may provide for segregation of the nonliquid from the liquid assets, the placing of the same in the hands of a liquidating agent appointed by the district court for the benefit first of the creditors of the bank and thereafter of the reorganized bank, and for reduction of the debtor liability of the reorganized bank to depositors and unsecured creditors to a sum equivalent to the then market value of the assets carried forward into the reorganized bank. Whenever it appears "wise or advisable in order to effectuate the reorganization of any bank," the commissioner of banks is authorized to levy an assessment upon the stockholders.

A plan of reorganization of the bank was prepared and submitted which provided, among other things (1) for the placing in the hands of a liquidating agent "certain assets or fractions thereof of doubtful or undetermined value, but of a total face value of approximately $139,942.52," certain "uncollected previously charged-off assets, amounting to approximately $12,000," which were characterized as "an additional donation by the bank" "to the trust fund," and certain promissory notes, secured by a pledge of stock, of the face value of $5,750, and for the absorption and assumption by the unsecured creditors and depositors of certain losses of the bank; and (2) for the reduction of deposits and claims 55 per cent or approximately $164,313.16, a reduction of the capital in the sum of $10,000, and a payment by the stockholders equal to 55 per cent of the face value of their stock, or $8,000.

The defendants Cooper, Kells, J. A. DuBois, B. F. DuBois, and Sullivan were officers and directors of the bank. J. A. DuBois, Sr. was at the time of the submission and approval of the plan of reorganization referred to later an officer and director of the bank. Subsequent thereto he died. His personal representatives are parties defendant. The defendant Peyton was commissioner of banks, and the defendant Collins was a deputy bank examiner. The surety

company was surety on Peyton's official bond, and it is sought to charge it as surety only.

The plan of reorganization was duly submitted to the depositors and unsecured creditors, over 75 per cent of whom in number and amount approved the same.

It is claimed that such approval was obtained by fraud of the officers and directors of the bank, including J. A. DuBois, Sr., with the aid and connivance of the defendants Peyton, Collins, and Susens.

The alleged fraud is based upon a claimed misrepresentation that the deposits of Stearns county and certain named cities, villages, school districts, townships, and a firemen's relief association aggregating $126,838.61 were exempt from the provisions of L. 1933, c. 55, under which the reorganization proceedings were had; that such depositors "were entitled to a preference," and that they "were to be paid in full." There was also an allegation that "assets sufficient to pay said deposits of $126,838.61 would in no event be available to the general depositors, whether such depositors signed said exhibit 'A' [the plan of reorganization] or not." It is further alleged that said defendants knew that the depositors of the public funds mentioned were not exempt from the reorganization and were not entitled to any preference in the event of the insolvency of the bank.

The claim is that defendants were not only guilty of intentional misrepresentation, but of concealment also. It is alleged that B. F. DuBois as treasurer of Sauk Centre had $114,536.20 on deposit in the bank; that the deposit was not secured by either a depository bond or, in lieu thereof, a deposit with the city treasurer of bonds to secure the deposit as authorized by statute; that the city's deposit, like the other deposits of public funds, are not entitled to any preference in a liquidation of the bank in insolvency proceedings; that the treasurer, DuBois, and his sureties, the defendants Cooper, Kells, and Sullivan, were all personally liable to the city on the treasurer's bond in the sum of $100,000 because of

the loss occasioned to the city by the treasurer's acts; and that they concealed the facts with respect to their liability.

Secondly, it is alleged, not only that the bank agreed to donate the $12,000 asset, but that *"thereafter"* the defendants turned over to the trust fund as such donation assets of the bank having a face value of $15,000; that at the time of making the transfer to the trustee the defendants *"declared"* such donated assets to have a value of $15,000 and knew that said valuation was "false, not true, and excessive by $14,350."

By way of damages it is alleged that by according to the depositors of the public funds exemption from the reorganization and preference in the payment of their claims by the reorganized bank defendants prevented the transfer to the trustee's fund for the benefit of general creditors and depositors of the sum of $69,761.24, of which $59,680 would have been available for the payment of their claims; that defendants "converted" said amount to the use of the reorganized bank; that they failed to turn over to the trust fund a donated asset of the value of $15,000; and that consequently the damage to the general creditors and depositors was the sum of $74,030.

The commissioner of banks approved the plan of reorganization on April 5, 1933. On April 8 it was submitted to the depositors and unsecured creditors, who approved the same and the plan was declared effective as of April 15. On May 19, 1933, the district court appointed Cooper as trustee and liquidating agent. On February 25, 1939, Rien was appointed as cotrustee and liquidating agent. The facts concerning his appointment are stated in In re Trust for Depositors of First State Bank, 207 Minn. 592, 292 N. W. 185. These actions were commenced on or about August 18, 1939.

Plaintiff Rien sues as a statutory trustee for the benefit of the beneficiaries of the trusteed assets.

Plaintiff Wicklund further alleges in her complaint that she is a depositor having an unsecured claim against the bank; that there are over 900 similar depositors having similar claims; that

the question which is the subject of the action is one of general and common interest to all the depositors and creditors; and that she sues in a representative capacity in behalf of herself and all other depositors and unsecured creditors.

By their answers defendants deny all the charges of fraud; allege that plaintiffs are without capacity to sue; and that the causes of action, if any, accrued more than six years prior to the commencement of the actions and are barred by the statute of limitations.

The replies allege that plaintiffs did not discover the fraud until a short time prior to commencement of the actions and that the causes of action accrued within six years thereof.

Both actions were brought on for trial together. At the commencement of the trial defendants objected to the introduction of any evidence and moved to dismiss upon the grounds that neither complaint stated a cause of action and that neither plaintiff was a proper party plaintiff. The court granted the motion to dismiss in each case. Each plaintiff made a motion for a new trial and appeals from the order denying it.

The cases have been argued twice. On the first argument the point principally stressed related to the right of the plaintiffs to maintain the actions. We subsequently restored the case to the calendar for the purpose of having additional briefs filed and a reargument. On the reargument the point also was stressed that each complaint failed to state a cause of action for fraud.

■ There were two kinds of representations. First, there were the representations that the depositors of public funds were exempt from, and entitled to a preference over general creditors and depositors under, a reorganization. The representations were true in virtue of § 8 of the statute (L. 1933, c. 55, § 8), which reads:

"Deposits * * * of the State of Minnesota, and of the counties, cities, villages, boroughs, townships, school districts of said state * * * are exempt from the operation of this Act."

The effect of the statute is to maintain unimpaired the reorganized bank's liability to depositors of public funds so that such deposits shall be paid in full, and to reduce its liability to general creditors and other depositors according to the reorganization plan, and that only the amount as reduced shall be paid. Thereby depositors of public funds are preferred over general creditors and other depositors in a reorganization.

It is axiomatic that fraud cannot be predicated on the truth. A true representation is not actionable. Wann v. N. W. Trust Co. 120 Minn. 493, 139 N. W. 1061. Therefore the representations in question could not be the basis for a charge of fraud.

█ The representation that assets sufficient to pay the deposits of such depositors amounting to $126,838.61 would in no event be available to general depositors and presumably general creditors whether they signed the plan of reorganization or not is of a different kind. This representation is so sweeping in its terms as to embrace any conceivable proceeding in which the bank might have been liquidated and its assets applied to the claim of creditors and depositors. Therefore it included a proceeding in insolvency under the general law, Mason St. 1927, §§ 7689-7691.

A charge of fraud can be based only on a material representation. Not every representation is material. A representation is not material unless it prejudices the party or is germane to the fraud alleged. Materiality depends on the circumstances. In Winston v. Young, 52 Minn. 1, 53 N. W. 1015, we held that a representation by an executor to a legatee that the estate was solvent and able to pay all debts, made to induce the legatee to pay a mortgage upon real property belonging to the estate, was immaterial, for the reason that the representation did not relate to a matter from which prejudice resulted to the legatee, since the payment of the mortgage gave the legatee no claim or debt payable out of assets of the estate, and her rights and remedies against the estate were the same whether the estate was solvent or insolvent. In Edward Thompson Co. v. Peterson, 190 Minn. 566, 252 N. W. 438, a representation to an attorney as an inducement

to purchase lawbooks that other attorneys in the same city had purchased such books was held to be immaterial on the question of the value of the books. In Missouri Lincoln Trust Co. v. Third Nat. Bank, 154 Mo. App. 89, 133 S. W. 357, concealment by an endorsee of a bank draft that it had paid the same to discharge its obligation as an endorser and had the check in its possession was held immaterial as against a prior endorser who was responsible for its payment, upon the ground that such endorser was not thereby induced to do something that it was not otherwise bound to do.

Where the borrower's only concern was to obtain a loan, a representation by the lenders, who made loans as individuals and sometimes called themselves the company, that the loan was made by a joint-stock loan company, was held immaterial. Green v. Gosden, 3 M. & G. 446, 11 L. J. C. P. 4.

Of course none of the cases cited are squarely in point that the representation in question was not material. We are not aware of any case holding that it is. But they serve to illustrate the applicable principle. An analysis of the complaint shows that the representation in question was not material to the charge of fraud alleged.

The alleged fraud is based on the claimed misrepresentation that the depositors of the public funds were exempt from and entitled to preference under the reorganization. The relief demanded is the recovery of the damages claimed to have resulted from allowing such exemption and preference.

No other charge of fraud is alleged as a basis for recovery; no other relief is demanded.

The complaints do not allege in effect, as plaintiffs insist that they do, that the alleged fraud is that the general creditors and depositors were induced by the representation to make a choice between a proceeding in insolvency under the general law, Mason St. 1927, §§ 7689-7691, and a reorganization under c. 55 and for damages resulting from making such a choice. There are no allegations that, if the bank had not been reorganized under c. 55, it

would have been liquidated in insolvency proceedings; what the general creditors and depositors would have received in insolvency; and, much less, that such amount would be greater than that received under the reorganization. The complaints do not allege that any damage resulted because the bank was reorganized rather than liquidated in insolvency.

We shall assume, but not decide, that the depositors of public funds were general creditors and not entitled to preference if the bank had been liquidated in insolvency proceedings. Perhaps, in view of the facts that the bank was never designated as a public depository pursuant to statute and had failed to give a depository bond or, in lieu thereof, to make a deposit of bonds with the city treasurer to secure the deposits, and that the city treasurer was also a stockholder and officer of the bank, the assumption is unwarranted as to the city of Sauk Centre, which had $114,536.20 on deposit. See City of Marshall v. Gregoire, 193 Minn. 188, 259 N. W. 377, 98 A. L. R. 711; City of Cloquet v. N. W. State Bank, 172 Minn. 324, 215 N. W. 174; Mason St. 1927, § 10305 (amended subsequent to the deposits here by Mason St. 1941 Supp. § 10305).

There might be some question whether the deposit of the firemen's relief association is that of a corporation or association for the relief of the poor or unemployed, which is the only basis on which it might be exempt within the meaning of the statute. The record shows that the deposit was $159.74. Since no point was made of the matter, we pass it. The deposit has been treated throughout the case as a deposit of public funds.

In the final analysis, the only representations relied on as the basis of recovery are those that the depositors of public funds were exempt from, and entitled to a preference under, the reorganization. Hence, only those representations were material to the fraud alleged. Damages are claimed only upon the theory that those representations were false. On the other hand, there is no basis alleged for a recovery on the representation that in no event could assets of the bank equal to the deposits of the public depositors be applied in payment of the claims of general cred-

itors and depositors. The representation is not an element of the fraud alleged. The fraud alleged would be as complete if the allegations concerning this representation were entirely eliminated. Hence it is immaterial on the question of liability.

Nor is the representation rendered material because it may have been considered as inducing belief in the representations that the depositors of public funds were exempt from, and entitled to preference over general creditors and depositors under, the reorganization. If so, it only induced belief in what is true as a matter of law. A representation true in fact is not rendered untrue because false representations are made to support it. In principle, the case is much like a decision correct as to result but based upon a wrong reason. The decision will be sustained although the reasons given for it are wrong. Merchants & Farmers State Bank v. Olson, 189 Minn. 528, 250 N. W. 366, 89 A. L. R. 1289; Bunday v. Dunbar, 5 Minn. 362 (444). Representations to support the truth of the representation upon which liability is predicated are immaterial where, as here, the truth of the representation is established and no liability is predicated on the supporting representations as such.

As the case stands, the only germane representations claimed to be false, that is, those relating to the exemption of depositors of public funds from, and their right of preference over general creditors and depositors under, a reorganization of the bank under c. 55, are true as a matter of law. At most, the other representation, that in no event would assets of the bank equivalent to the amount of the public deposits be available for payment of claims of general creditors and depositors, could be considered only as an inducement for the belief that the only germane representations were true, and not as an element of any wrong alleged to have been done to the general creditors and depositors. It follows that the representation was not material.

■ The concealment by certain defendants that they were liable on DuBois' bond as city treasurer of Sauk Centre was not alleged as an element of the fraud alleged or any other actionable wrong.

It was subsidiary and a means to induce reliance on the representation that the depositors of public funds were exempt from and preferred under a reorganization. Therefore the concealment was immaterial for the same reasons as the representation relating to the availability of assets for the payment of general creditors and depositors considered in the preceding subdivision of this opinion.

■ At the time the approval was given to the plan of reorganization, sometime between April 8 and 15, 1933, no representation was made concerning the value of the donated assets. The plan contained an agreement for a donation to the trust fund in the future of uncollected previously charged-off assets amounting to approximately $12,000. Sometime after the appointment of the trustee on May 19, 1933, defendants turned over to him assets amounting not to $12,000 but to $15,000. This was in full performance of the promise to make the donation.

The complaint does not allege when defendants "declared" that the donated assets had a value of $15,000, except that it was "thereafter." It is plain that "thereafter" was after the approval was given and at the time the assets were turned over to the trustee. Hence, the alleged declaration of value of the donated assets was made approximately five or six weeks after the approval of the plan of reorganization.

There can be no fraud by means of a false representation unless the party who claims that he was defrauded acted in reliance on the representation. A party cannot rely on a representation which had not been made when he acted. Fraud cannot be predicated upon a representation made subsequent to the act claimed to have been induced thereby. Nilsen v. Farmers State Bank, 178 Minn. 574, 228 N. W. 152; Faribault v. Sater, 13 Minn. 210 (223); Carville v. Lane, 116 Me. 332, 101 A. 968; Smith v. Chadwick, L. R. 20 Ch. Div. 27, at pp. 62-63, affirmed, L. R. 9 App. Cas. 187. Since the declaration concerning the value of the donated assets, which was the only representation concerning the matter, had not been made when the general creditors and depositors gave their ap-

528

proval, they could not have acted in reliance thereon in so doing. Consequently fraud cannot be predicated upon the representation in question.

We have not passed on the question of the capacity of the plaintiffs to maintain the actions. Decision that there were no causes of action on which to sue disposes of all questions involved.

The orders should be affirmed.

Affirmed.