## LAKELAND TOOL AND ENGINEERING, INC.,
### Appellee,

v.

### THERMO–SERV, INC., Appellant.

#### No. 90–5020MN.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1990.

Decided Oct. 16, 1990.

**478**

Barbara Jean D'Aquila, Minneapolis, Minn., for appellant.

Jeffrey G. Stephenson, Minneapolis, Minn., for appellee.

Before WOLLMAN and MAGILL, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Thermo–Serv, Inc. (Thermo–Serv) appeals the district court's[1] entry of summary judgment in favor of Lakeland Tool and Engineering, Inc. (Lakeland) based on Thermo–Serv's breach of contract and failure to pay on a promissory note. Thermo–Serv contends that summary judgment was inappropriate because there are unresolved questions of fact relating to its affirmative defense, its counterclaim, and the meaning of the parties' agreement. After full consideration of Thermo–Serv's arguments, we affirm the district court's judgment.

## I. BACKGROUND

Thermo–Serv is a Texas corporation engaged in the manufacture of plastic insulated beverage containers. Lakeland is a Minnesota corporation that manufactured parts for Thermo–Serv's products. During the course of their business relationship, Thermo–Serv accumulated a debt to Lakeland totalling $390,775.61. On January 6, 1989, the two companies entered into an agreement designed to resolve Thermo–Serv's debt and terminate their business relationship.

The agreement provided that Thermo–Serv would pay Lakeland $50,000 upon execution of the agreement and an additional amount pursuant to the terms of a promissory note executed at the same time as the agreement. This note required Thermo–Serv to pay Lakeland $50,000 on February 6, 1989, and $40,775.61 on March 6, 1989. In the event of default, the agreement provided that Lakeland was entitled to twelve-percent interest on the debt as well as all attorney's fees incurred in its collection efforts. Finally, the agreement required that Thermo–Serv terminate its contract with Service Ideas, Inc. (Service Ideas).[2] In return, Lakeland was to credit $250,000 toward Thermo–Serv's debt. However, the agreement allowed for the credit to be given only after all the money owed pursuant to both the agreement and the note was paid; the credit would not be earned if the amounts were not paid as agreed.

Thermo–Serv failed to make the payments required by the note, and Lakeland brought suit in state court seeking recovery on the note, interest, and attorney's fees. Lakeland also sought to recover the

---

1. The Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota.

2. Apparently, Thermo–Serv and Service Ideas had previously entered into a contract whereby Thermo–Serv supplied product to Service Ideas, and the agreement between Thermo–Serv and Lakeland required Thermo–Serv to surrender its rights under this contract. The precise terms of the Service Ideas contract are not part of the record, and Service Ideas is not a party to this action.

outstanding balance of the debt, which was $250,000. Thermo–Serv removed the suit to federal district court. Its amended answer asserted a counterclaim for fraud and sought rescission of the agreement and $350,000 in damages. Thermo–Serv's fraud theory arose out of Lakeland's failure to disclose its relationship with Royal Crest, Inc. (Royal Crest), a potential competitor of Thermo–Serv's. Thermo–Serv contended that if it had known of Lakeland's involvement with Royal Crest it would not have entered into the agreement with Lakeland.

Lakeland moved for summary judgment, which was granted. The district court awarded Lakeland $90,775.61 (the sum of the payments due under the note) plus 12% for the breach of the note, $250,000 (the outstanding debt balance) for the breach of the agreement and $7,614 for costs and fees. Thermo–Serv appeals, alleging that summary judgment was inappropriate because questions of fact regarding its counterclaim remained unresolved. Thermo–Serv also challenges the award of $250,000 for breach of the agreement, contending that the district court misinterpreted the contract and should have allowed a jury to resolve its meaning.

## II. DISCUSSION

■ We accept, as we must,[3] that Lakeland "advised Thermo–Serv that it intended to attempt to secure a contract to sell products to [Service Ideas]" but failed to disclose that it was "involve[d] with a company being formed to compete with Thermo–Serv for other customers." Appellant's Brief at 22 (emphasis omitted). We further assume that Lakeland had superior access to this information, and that Thermo–Serv would not have entered into the agreement had it known of Lakeland's future plans. Nevertheless, under Minnesota law, absent a confidential or fiduciary relationship one party to a contract generally has no obligation to disclose material facts to the other party. *Klein v. First Edina*

*Nat'l Bank*, 293 Minn. 418, 421, 196 N.W.2d 619, 622 (1972). However, there are three special circumstances in which material facts must be disclosed:

(a) One who speaks must say enough to prevent his words from misleading the other party.

(b) One who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party.

(c) One who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts.

*Id.* (citations omitted). Thermo–Serv contends that either of the first two special circumstances mandated that Lakeland disclose both its relationship with Royal Crest and its plans to actively compete with Thermo–Serv in the plastic beverage container market. We disagree.

■ All of the special circumstances require that the omitted fact be material to the transaction. *E.g., Id.; see also Thomas v. Murphy*, 87 Minn. 358, 361, 91 N.W. 1097, 1098 (1902). Not all facts are material, and materiality depends on the circumstances. *Rien v. Cooper*, 211 Minn. 517, 523, 1 N.W.2d 847, 851 (1942). Material facts are those that "naturally affect the conduct of the party addressed." *Yost v. Millhouse*, 373 N.W.2d 826, 830 (Minn.Ct. App.1985). Typically, material facts are facts concerning the contract's subject matter or the parties' abilities to perform. *See, e.g., Thomas*, 87 Minn. 358, 91 N.W. 1097 (party represented that he would quitclaim property, but failed to disclose that he had already parted with the land); *Simonsen v. BTH Properties*, 410 N.W.2d 458 (Minn.Ct.App.1987) (apartment building described as having six units when the area was zoned to allow only five-unit buildings). Only these types of facts, which lie at the heart of the contract, can be said to naturally affect a party's conduct. The

---

**3.** It is well established that when reviewing a grant of summary judgment, this court "views the facts in the light most favorable to the nonmovant, giving it the benefit of all reasonable inferences to be drawn from the facts." *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990).

facts omitted by Lakeland, however, have no bearing on either its ability to perform under the agreement or on the subject matter of the agreement. The purposes of the agreement were to resolve Thermo–Serv's debt and sever the business relationship between the two companies. The agreement was not designed to govern their future business efforts, nor was it intended to describe or limit their respective arenas of competition. Lakeland's past involvement with Royal Crest and its future involvement in the market are totally tangential to the parties' collective efforts and thus are immaterial.[4]

 It is insufficient for Thermo–Serv to merely contend that these facts were important to it; materiality is governed by an objective standard, and the existence of a duty to disclose is a question of law.[5] Because the facts at issue were not material to the agreement, no special circumstance required their disclosure.

 We also believe that the district court properly determined that Thermo–Serv breached the agreement by failing to make the payments required by the note. The agreement provides, in part, as follows:

> In consideration of (i) Thermo–Serv's releasing Lakeland of its obligations under the Agreement, (ii) Thermo–Serv's agreement to terminate certain provisions of that certain Agreement dated September 22, 1986 among Thermo–Serv and Service Ideas, Inc. (the "Service Ideas Contract"), and (iii) Thermo–Serv's full payment of the money described in 1(a) below and the Promissory Note attached as Exhibit "A", Lakeland hereby agrees to credit against the amount owing on the Receivable the amount of $250,000.00. Such credit will be effective only upon full payment of the cash described in paragraph 1(a) of this Agreement and the Promissory Note attached as Exhibit "A", otherwise no credit shall be earned by Thermo–Serv. Such credits shall act as a direct, dollar-for-dollar reduction against the amount of the Receivable. The balance of the Receivable will be paid by Thermo–Serv as follows:
>
> (a) $50,000.00 in cash or immediately available funds upon execution of this Agreement.
>
> (b) The balance of the receivable [sic] will be paid by Thermo–Serv's execution and delivery of a promissory note in the amount of such excess in substantially the form of Exhibit "A" attached hereto. Such note shall provide for a payment of $50,000.00 one month after execution of this Agreement and the remaining balance two months after the date hereof. Such note shall be non-interest bearing.

Joint Appendix at 11–12.

The district court understood this language to mean that Lakeland was required to credit the $250,000 only if Thermo–Serv made the payments on the note; by failing to pay on the due dates Thermo–Serv breached both the note and the agreement and was not entitled to the credit. Thermo–Serv contends that the language is ambiguous because it is subject to another interpretation; specifically, Thermo–Serv is entitled to the credit when it pays the money due on the note, even if full payment is delinquent. Thermo–Serv supports this interpretation by claiming the note contemplates late payment by virtue of its interest

---

4. In *Rien,* the court described several cases in which the supposedly omitted facts were not material to the transaction. *See Rien,* 211 Minn. at 523–24, 1 N.W.2d at 851. The omitted facts in the case at bar are strikingly similar in nature to the omitted facts in those described cases.

5. Minnesota courts have not specifically addressed this issue, but we believe that the requirement that material facts *naturally* affect a party's decision mandates an objective standard. This conforms to decisions from other jurisdictions. *E.g., Reed v. King,* 145 Cal.App.3d 261, 263, 193 Cal.Rptr. 130, 132 (1983) (materiality is a question of law); *Denberg v. Loretto Heights College,* 694 P.2d 375, 377 (Colo.Ct.App.1984) (fact is material if reasonable person would attach importance to it); *Timi v. Prescott State Bank,* 220 Kan. 377, 389, 553 P.2d 315, 325 (1976) (materiality is measured by reasonable person); *Osterberger v. Hites Constr. Co.,* 599 S.W.2d 221, 228 (Mo.Ct.App.1980) (test of materiality is objective); *Ollerman v. O'Rourke Co.,* 94 Wis.2d 17, 33, 288 N.W.2d 95, 100 (1980) (existence of duty to disclose is question of law).

provision, and contends that this alternative interpretation injects a fact question rendering summary judgment inappropriate. Once again, we disagree with Thermo–Serv's conclusion.

■ Where the language of the contract unambiguously expresses the intent of the parties, construction of the contract is a question of law. *Hunt v. IBM Mid Am. Employees Fed. Credit Union*, 384 N.W.2d 853, 856 (Minn.1986). An ambiguity exists if the contract's language is reasonably susceptible of more than one meaning. *Metro Office Parks Co. v. Control Data Corp.*, 295 Minn. 348, 351, 205 N.W.2d 121, 123 (1973). The agreement is not ambiguous because Thermo–Serv's proffered interpretation is not reasonable. As noted in *Collins Truck Lines v. Metropolitan Waste Control Comm'n*, 274 N.W.2d 123, 126 (Minn.1979), "[i]n order to be ambiguous in the legal sense, both constructions must be reasonable." Thermo–Serv's interpretation suggests that it is entitled to a credit *whenever* it pays the money due on the note, regardless of when full payment occurs. Contracts are to be construed so as to avoid absurdity. *Employers Mut. Liability Ins. Co. of Wis. v. Eagles Lodge of Hallock, Minn.*, 282 Minn. 477, 479–80, 165 N.W.2d 554, 556 (1969). It strains reasonable belief to understand the agreement as allowing for payment at any time—especially when both the agreement and the note specify the dates payments are due. Thermo–Serv's interpretation is further defeated by the purpose of the agreement, which specifically states that the parties intended to terminate their rights, obligations and duties. Joint Appendix at 11. It is hard to believe that the parties would have terminated their relationship and dealings in a manner that allows those dealings to continue indefinitely.

While it is true that the note allows Lakeland to collect interest, the parties did specify the dates payment were due. As we have recognized in the past, Minnesota law does not allow for the recovery of interest unless the parties have specifically contracted for it. *Anderson v. Property*

*Developers, Inc.*, 555 F.2d 648, 652 (8th Cir.1977). Lakeland did not agree that delinquent payments were an acceptable method of performance merely because it protected its interests in the event of a default by Thermo–Serv.

■ Finally, Thermo–Serv contends that the district court's construction is unduly harsh in that Thermo–Serv is required to pay the full amount of the original debt *and* forego the lost profits associated with the Service Ideas contract.[6] However, all this demonstrates is that this breach has been very expensive for Thermo–Serv. The lost profits occurred because Thermo–Serv gave up the Service Ideas contract and *then* breached the agreement; thus, the alleged harshness is present only because of the timing and sequence of Thermo–Serv's own actions.

### III. CONCLUSION

Agreeing with the district court's ruling that Thermo–Serv's defense of fraudulent concealment was inapplicable as a matter of law, and further agreeing that Thermo–Serv breached the agreement by failing to pay on the dates prescribed in the note, we affirm the district court's judgment.

---

**6.** Thermo–Serv estimates these lost profits to be $350,000.