FAJARDO SUGAR CO. OF PORTO RICO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16544.   Promulgated September 25, 1930.

*David A. Buckley, Jr., Esq., Alexander C. Dick, Esq.,* and *Dean Hill Stanley, Esq.,* for the petitioner.

*L. A. Luce, Esq.,* for the respondent.

984

OPINION.

Phillips: Since petitioner's fiscal year began in 1920 and ended July 31, 1921, its income for that year is taxable in the manner provided by section 205(a) of the Revenue Act of 1921 which, so far as pertinent here, reads as follows:

That if a taxpayer makes return for a fiscal year. beginning in 1920 and ending in 1921, his tax under this title for the taxable year 1921 shall be the sum of: (1) the same proportion of a tax for the entire period computed under Title II of the Revenue Act of 1918 at the rates for the calendar year 1920 which the portion of such period falling within the calendar year 1920 is of the entire period, and (2) the same proportion of a tax for the entire period computed under this title at the rates for the calendar year 1921, which the portion of such period falling within the calendar year 1921 is of the entire period.

In determining the issues involved in this proceeding we must have reference to both the 1918 and 1921 Acts.

One of the errors assigned in the petition is that a net loss of $73,697.57 was sustained by petitioner in the fiscal year ended July 31, 1919, which it was entitled to deduct from its income for the year ended July 31, 1921. No mention.is made in petitioner's brief with respect to this assignment of error and we might be justified in assuming that it had been abandoned. There was, however, considerable proof introduced with respect to this issue and we proceed to discuss it. Assuming that there was a net loss for the period ended July 31, 1919, which could have been deducted from the income for the year ended July 31, 1920, under the provisions of section 204 of the Revenue Act of 1918, there is no provision in that act for carrying such net loss forward into the following fiscal year ended July 31, 1921. For this reason, if for no other, the claim of the petitioner would be denied so far as it relates to the computation of income and tax under the 1918 Act. See also *Butler's Warehouses, Inc.*, 1 B. T. A. 851; *Mortigan Monument Co. Assn.*, 12 B. T. A. 831, and cases there cited. Section 204 of the Revenue Act of 1921, dealing with net losses under that act, provides for their deduction only where sustained in a taxable year beginning after December 31, 1920, whereby it clearly appears that the facts in this case do not bring it within that section.

Furthermore, the evidence fails to show that any net loss was sustained by the petitioner during the fiscal year ended July 31, 1919. Briefly summarized, the evidence shows that the petitioner in February, 1919, took over the assets and assumed the liability of a corporation of the same name incorporated under the laws of the State of New York. Under an act approved June 26, 1919, the New York corporation became liable to Porto Rico for income tax of $73,697.57. Such tax was subsequently paid either by petitioner or the predecessor company. The petitioner had no income from sources within the United States for the fiscal year ended July 31, 1919. There is no showing with respect to its income from sources outside the United States. Its claim therefore must necessarily rest upon the theory that this tax was deductible in computing its net income. This would be contrary to the express provisions of section 234(a)(3)(e) of the 1918 Act.

Petitioner asserts that it suffered a loss of $660,453.08 in its total business for the year ended July 31, 1921; that its gross income was $3,755,751.45, of which $146,064.07 has been held to be from sources within the United States; that it had expenses of $4,416,204.53, of which $61,135.88 has been allocated against United States income as interest paid therein; that the remaining expense can not be allocated to any class of income and should be apportioned between income from sources within and without the United States; that the portion

so allocated against United States income should be allowed as a deduction against income from sources within the United States and that the result will be no taxable income. In section 234 (b) of the Revenue Act of 1921 it is provided that the deductions allowed in subdivision (a) shall be allowed to a foreign corporation only " if and to the extent that they are connected with income from sources within the United States." It further provides that the proper apportionment and allocation of the deductions with respect to income within and without the United States shall be determined as provided in section 217 under rules and regulations to be prescribed. Under section 217 and the regulations it is prescribed, in effect, that deductions shall, so far as possible, be allocated to income from sources within and sources without the United States and any deductions which can not be so allocated shall be apportioned pro rata. The contention made by petitioner is sound if no allocation can be made of the expenses other than those allocated to income from sources within the United States. The fact in the present case, however, is that the evidence submitted by petitioner establishes that substantially all, if not all, of the expenses which it seeks to apportion must, under the revenue acts and the regulations of the Commissioner issued thereunder, be allocated to the income produced outside the United States. The only description of such expenses which has been furnished is contained in exhibit 9 as follows:

Operating charges:

| | |
|---|---|
| Cost of cane, including freight | $2, 906, 208. 85 |
| Producing and manufacturing costs and selling, general and administrative expenses | 1, 291, 952. 01 |
| Interest paid | 63, 710. 98 |
| Provision for depreciation | 100, 060. 17 |
| Provision for anticipated increased cost of replacement | 54, 272. 52 |
| | 4, 416, 204. 53 |

The Commissioner has allowed the interest to be deducted. The description of the remaining expenses leads to the conclusion that they were properly chargeable against operations outside the United States. Certainly petitioner has not sustained the burden of showing what amounts are to be so charged and what amounts should be apportioned ratably because not attributable directly to the production of income from either of the two sources. The growing, buying, manufacturing and selling of petitioner's sugar having all occurred outside the United States, we can see no basis for the assumption made by its counsel that no part of these expenses is to be allocated to the production of income from sources without the United States and that they must all be apportioned.

It is clear that Congress intended to tax foreign corporations upon their net income from sources within the United States computed as provided in the statute and without regard to gain or loss upon operations elsewhere. The computation of income having been made in accordance with the statute, it is properly subject to tax.

We come next to consider the questions raised with respect to interest arising from loans made in the United States. Section 233 (b) of the Revenue Act of 1918 provides:

(b) In the case of a foreign corporation gross income includes only the gross income from sources within the United States, including the interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise, dividends from resident corporations, and including all amounts received (although paid under a contract for the sale of goods or otherwise) representing profits on the manufacture and disposition of goods within the United States.

It is clear that under this provision of the act petitioner's income from loans and trade acceptances is to be included in income for the purpose of computing the tax under the Revenue Act of 1918. This is conceded. The provisions of the Revenue Act of 1921 are different. Under sections 233 (b) and 217 (a) the gross income of a foreign corporation is to include among other things:

(1) Interest on bonds, notes or other interest-bearing obligations of residents, corporate or otherwise, not including (A) interest on deposits with persons carrying on the banking business paid to persons not engaged in business within the United States and not having an office or place of business therein, * * *

Petitioner does not question that income derived from the purchase and sale of trade acceptances is a part of its gross income within this section, but urges that the interest received upon loans to B. H. Howell, Son & Co. and West India Sugar Finance Corporation was interest on deposits with persons carrying on the banking business within the United States and therefore not to be included in its gross income.

While some of the functions of the Howell Co. and the Finance Corporation resemble those performed by banks (*Auten* v. *National Bank*, 174 U. S. 125; *Smith* v. *Kansas City Tile Co.*, 255 U. S. 180), it appears that these functions are more or less incidental to the general sugar business in which they are engaged. What is more to the point, there is no evidence in the record which indicates that either of these companies is or was engaged in the business of receiving deposits. Cf. *Oulton* v. *Savings Institutions*, 17 Wall. 109. The testimony is to the effect that the Howell Co. borrowed and loaned large amounts of money in connection with its general sugar business. The articles of the West India Finance Corporation em-

power it to borrow from banks or other financial institutions or from partnerships, corporations or individuals in order to enable it to finance sugar manufacturers or dealers or other corporations, individuals or firms. These are limits within which these companies may acquire the use of the money of others.

The difference between accepting deposits and borrowing money is so distinct that the authority of national bank officers to borrow money in behalf of the bank has been the subject of serious consideration by the Supreme Court. See *Western Bank* v. *Armstrong*, 152 U. S. 346; *Auten* v. *National Bank, supra; Aldrich* v. *Chemical National Bank*, 176 U. S. 618. While the status of debtor and creditor is created in both the case of a loan and of deposit, the obligations are quite different. Thus an interest-bearing deposit made by a guardian has been held to be neither an investment nor a loan. *In re Law's Estate*, 144 Pa. St. 449; 22 Atl. 831. So where a school district treasurer deposited school funds in a bank, it was held that he had not loaned public money, an act condemned by statute unless the loan had received the approval of certain officers. *Hunt* v. *Hopley*, 120 Iowa, 695; 95 N. W. 205.

While the record is none too clear as to the precise method of operation followed by petitioner's debtors, it would indicate that they operated much as do other factors in the same and other businesses who, by contract, secure the right to sell, on a commission basis, the goods produced and as a part of the contract engage to finance or act as agents in financing the goods produced. Their income arises from commissions on the sale; the financing and other services rendered are incidental. They are not engaged in the business of receiving deposits, discounting commercial paper or issuing notes which circulate as money. They are neither prepared nor required to repay these loans in the same manner in which a bank cashes a check or draft upon a deposit account. The difference between a banking deposit and a demand loan is so well known as not to require discussion. Also, it may be accepted as a general proposition that anyone may borrow money upon either time or demand loans, while the authority to receive deposits is strictly limited under our Federal and State laws. The petitioner carried these obligations upon its books as " demand loans " and the evidence indicates that the term was properly used. The statute excepts only interest on " deposits." On the record we are of opinion that these debtors were not carrying on the banking business and also that these obligations were loans and not deposits.

Another condition to this exemption is that the interest must be paid to an individual or corporation " not engaged in business

within the United States and not having an office or place of business therein." Without discussing whether petitioner was engaged in business within the United States, within the broad meaning of that term, it is sufficient to point out that in our opinion it did have an office or place of business in New York City, and that this was also the office of its general agent. In this office its board of directors met monthly and from it that board and the officers conducted and managed the general affairs and policy of the company; there its president and secretary and assistant treasurer had their offices; there it received reports of the operation of its properties in Porto Rico, kept its correspondence files and a safe, and prepared reports for its directors; there the loans on which the interest in question was paid were negotiated; there it declared and paid its dividends; there the income-tax returns were whipped into shape, signed and verified; and there it bought and sold acceptances which resulted in the income returned. It had a banking account in a New York bank out of which its dividends were paid. Its letterheads specified this address as its "New York Office." It seems immaterial that the rooms occupied were those of the partnership which was its agent; they were none the less used by petitioner as an office for the transaction of its business as distinguished from the business conducted by the partnership. It is our opinion that petitioner has not brought its income from interest on demand loans within the statutory exception and that such income is subject to income tax.

In view of the cause of petitioner's failure to file its income-tax return within the proper period and of the further facts that it was later filed at its own instance and without request or demand from any one and that the return filed has been accepted by respondent as true as to the amounts of income, we are of the opinion that petitioner has not been guilty of willful neglect of its obligation and that no penalty should be imposed.

*Decision will be entered under Rule 50.*