Balfour, Williamson & Co., Ltd., v. Commissioner.
Balfour, Williamson & Co. v. Commissioner
Docket No. 105343.
United States Tax Court
1943 Tax Ct. Memo LEXIS 382; 1 T.C.M. (CCH) 852; T.C.M. (RIA) 43157; March 30, 1943
*382 Harry J. Rudick, Esq., 26 Broadway, New York City, and John D. Garrison, Esq., for the petitioner. Conway N. Kitchen, Esq., and Henry J. Merry, Esq., for the respondent. STERNHAGEN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax and additions for delinquency as follows: Year ending
March 31
Deficiency
Addition
1931
$ 10,884.37
$ 5,039.12
1932
11,183.88
2,795.97
1933
11,223.64
2,805.91
1934
13,528.98
3,944.12
1935
15,287.18
4,071.99
Petitioner contends that from its income derived from sources within the United States it is entitled to a deduction of a ratable portion of business expenses of its London office. A percentage addition for delinquency is also in issue. Findings of Fact The petitioner was incorporated under the laws of Great Britain April 7, 1930, as a limited liability company to take over the business then being conducted by the partnership of Balfour, Williamson & Company of London, previously of Liverpool, which had been founded in 1851. The petitioner carried on all new business, and the partnership completed all its pending engagements and liquidated. In January, 1931, after the formal dissolution *383 of the partnership on December 31, 1930, its remaining assets and liabilities were taken over by the petitioner, the partnership's assets then being of an unrealizable character and its liabilities being to creditors, such as depositors, who were willing to transfer their accounts to petitioner. During the fiscal years 1931-1935, petitioner's principal offices were in London, England; it had no branch offices, and no offices or place of business in the United States. The returns for the taxable years were filed October 22, 1938, with the Collector of Internal Revenue at Baltimore, Maryland. The petitioner kept its books of account and filed its returns on an accrual basis. The petitioner's business since its incorporation was merchanting and merchant banking. Its merchanting business includes the exporting of merchandise from the United Kingdom and the European Continent to all parts of the world, but in particular to the North and South American Continents, and the importing to the United Kingdom and the European Continent of produce of the Americas and of other foreign countries. The merchanting business and the merchant banking business are distinct functions but interdependent. *384 As merchant banker, petitioner borrows and lends money, accepts and grants credits and deals in the purchase and sale of money as a commodity. Balfour, Guthrie & Company, Ltd. (hereinafter referred to as Guthrie) was incorporated under the laws of Delaware on April 14, 1930. The petitioner owned all of its outstanding 25,009 common shares of $100 par and 15 shares of its outstanding 2,439 preferred of $500 par. The common and preferred had equal voting rights. Guthrie was an export and import merchant, commission agent, factor, mill manager, and general agent for foreign shippers, export and import. It did business with others as well as with petitioner. Its principal office was in San Francisco, California, and it had branch offices in other Pacific coast cities and in New York. During the taxable years, petitioner had no relation or affiliation with any company in the United States other than Guthrie. The petitioner's gross income from all sources was as follows:
Period to March 31
Credits
1931
1932
1933
1934
1935
1
Commissions and Margins on Import Business
£ 15,076
14,933
13,371
19,018
23,495
2
Commissions on Export Business
4,168
6,287
3,573
5,549
8,689
3
Banking and Finance Commissions
7,283
5,698
5,978
5,739
4,965
4
Company, etc. Fees Received
3,588
2,800
3,753
4,112
3,767
5
Brokerage on Stock Exchange Business
50
143
257
440
1,326
6
Underwriting Account
507
....
50
250
466
7
Commissions on Insurance Business
81
162
210
308
395
8
Exchange Margins and Differences
....
....
544
2,634
365
9
Sundry Commissions
....
....
....
319
687
10
Interest Received:
Taxed
5,914
4,106
7,110
5,716
6,371
Untaxed
41,011
37,311
30,427
27,056
26,685
11
Dividends on Investments
52,632
6,419
5,582
25,020
17,935
12
Investment Operations
13,402
....
....
....
17,198
13
Transfer and Registration Fees
1
....
....
....
....
£ 143,713
77,859
70,855
96,161
112,344
* All shillings and pence have been omitted and all figures are carried to the nearest pound.
Item 1. Commissions are derived from transactions in which petitioner acts as agent or broker. *385 Margins are derived from transactions in which petitioner acts as principal. A substantial portion of the commissions relates entirely to consignments of South American produce shipped to the United Kingdom and the European Continent. The commissions and margins also relate to imports of canned goods, lumber and grain mainly from the North American Continent in transactions between Guthrie and a Canadian corporation, Balfour, Guthrie & Company (Canada) Ltd., wholly owned by petitioner, and to a slight extent of canned goods from Japan and grain from South America. Item 2 is commissions on exports from the United Kingdom or the European Continent of merchandise purchased by petitioner for foreign associates and shipped to various parts of the world, mainly the American continents. Its North American business was transacted with Guthrie and the Canadian company. A small part of the commissions was derived from purely domestic business or Philippine Island business. All shipments of merchandise by petitioner to Guthrie were shipped f.o.b. some point outside of the United States. Item 3 is principally commissions on acceptances in London of bills of exchange of foreign connections, *386 guarantees for account of third parties, including Guthrie, in favor of banks outside the United States, and commissions on miscellaneous financial transactions and services by petitioner in England; also fees of [*] 150 on the guaranteeing of credit given by the Wells Fargo Bank and Union Trust Company, located in the United States, to Guthrie in respect of sugar shipped from the Philippine Islands to the Pacific Coast. These fees were reported by the petitioner in its returns as income from sources within the United States. Item 4 is fees for services for English companies as registrar and secretary. Item 5 is brokerage commissions on the purchase and sale of securities for the account of others. Item 6 is commissions from underwriting public issues, and profits or loss on those taken up by petitioner and disposed of. Item 7 is earnings as agent for tariff companies in England and brokerage shared with others on business placed with Lloyd's underwriters. Item 8 is profit or loss in foreign exchange on transactions in merchandise entered into by petitioner involving currencies other than sterling. Item 9 is commissions on commodity futures or options for third parties on produce *387 exchanges. None of Items 4 to 9, inclusive, was performed outside the United Kingdom of Great Britain. Item 10 is interest, falling into two categories, fixed annual interest on which tax is deducted at the source under British income tax law, and general banking and trading interest received without the prior deduction of British income tax. The latter includes interest charged to Guthrie and other foreign connections. It was calculated on a day-to-day basis on each current debit item from the due date thereof to the end of the current half yearly period. The balance was carried forward and added to principal at the end of the half yearly period. Interest was accrued in the same way on credit items. During the years involved, the net interest accruals in favor of petitioner in the Guthrie account current were as follows: Period Ending March 31
1931
1932
1933
1934
1935
£ 34,445
£ 23,236
£ 23,582
£ 23,064
£ 24,360
$ 167,241.59
$ 89,192.22
$ 81,060.96
$ 114,247.52
$ 118,994.30
Prior to January 1, 1931, Guthrie had a debit balance on the books of petitioner's predecessor partnership on which net interest of [*] 51,760 had accrued in favor of the partnership and Guthrie had a credit balance on the books of petitioner upon which net interest of [*] 17,315 had accrued in favor of Guthrie. In the return for the period *388 ending March 31, 1931, the difference between these two items, or [*] 34,445, was included as income. None of the interest included in item 10 is interest from sources within the United States except the interest from Guthrie. Item 11 is dividends from stockholdings within the category of general investments and on stock bought and sold in the daily operations of its investment department. None was from any domestic corporation within the United States. Item 12 is earnings from the sale of securities and the increases in inventory value of securities. None of the sales was effected in the United States. The amounts were not included by petitioner in gross income for the period ending March 31, 1931, and the year March 31, 1935, respectively, in computing the ratio of United States income to total gross income for the determination of the amount of the expense deductions allocable to United States income, and no elimination of the expense of handling the investment operations was made. Item 13 is fees for the registration of share transfers, death certificates, etc. Petitioner's expenses were as follows: [SEE TABLE IN ORIGINAL] Item 1 is salaries, compensation and health and unemployment *389 insurance for petitioner's London staff. Item 2 is rental for London offices and warehouse and real estate taxes. No office space was allocated to the business transacted with Guthrie. Items 3, 4 and 5, were general overhead expenses. Item 6 is the cost of membership in various produce exchanges in London and Liverpool as well as trade periodicals and shipping lists. The exchange memberships were for the purposes of trading, including the trading transactions for Guthrie. Item 7 is cost of normal recurring repairs and upkeep with the exception of [*] 8 in 1931, [*] 16 in 1932, and [*] 22 in 1935. Items 8, 9 and 10 are sundry office charges, bank charges, and insurance covering office furniture and fittings and employers' liability insurance. Item 11 is traveling expenses of directors and staff in the ordinary course of business as a whole and expenses of persons investigating certain continental business. Item 12 is charges for legal and accounting services, audit and taxation, notarial fees, etc., required in the ordinary course of petitioner's business excepting [SEE TABLE IN ORIGINAL]
Such accounting fees were in connection with petitioner's reorganization of capital and *390 members' rights. Item 13. From April 7, 1930, to March 31, 1931, the salaries and general overhead charges of the business were borne by the partnership. The petitioner did not become directly liable for such expenses until January, 1931. The [*] 21,000 was paid by petitioner to the partnership pursuant to agreement in reimbursements of its share of such expenses. Item 14. The trading charges were incurred in the ordinary course of business including transactions with Guthrie, except that the charges under "Export Business" were paid to forwarding agents for export business to South America and have no relation to business with Guthrie. Item 15 is loss or gain in futures and options in commodities on various produce exchanges in London and Liverpool without the intervention of Guthrie or any other American brokerage firm, except several transactions effected through Guthrie in the fiscal year ending March 31, 1935, resulting in a loss of [*] 255 ($1,346.47). Item 16 covers costs in operating accounts with its London banker, and the domiciling of its acceptances at the bank, and also charges to other bankers in obtaining acceptance credits which petitioner in turn granted to its *391 clients. The charges in the fiscal years ending March 31, 1934, and 1935, included commissions paid to Guthrie by petitioner on dollar acceptances for the account of petitioner's suppliers or clients, in the respective amounts of [*] 143 ($707.85) and [*] 140 ($684.60). The latter items were claimed as deductions by petitioner in its returns for the years ending March 31, 1934, and 1935, but were disallowed by the respondent. Item 18 includes finance interest paid to depositors and directors and others on balances and general banking and trading interest paid to petitioner's London banker, to foreign creditors and to subsidiary companies, and bill discounts. Item 19 is the British income taxes paid or refunded. This item, together with item 22, "Life Assurance Premium," item 23, "Bad Debts and Amounts written off," and item 25, "Preliminary Expenses written off," are conceded by petitioner not to be properly deductible for income tax purposes and were eliminated from total charges in Schedule B, attached to the respective returns, showing the computation of deductions allocable against gross income from sources within the United States. Item 20 is compensation for services of directors *392 as whole-time officers. Item 21 is cost of petitioner's share of endowment assurance for the benefit of petitioner's directors and staff. Item 24 is the balance written off of cost of office furniture and equipment transferred from the partnership to petitioner in January, 1931. Petitioner has always divided its business, according to the nature of the work, into a cash and banking department, an import department, an export department, and other service departments, such as cables, messengers, etc. All the departments, except the investment department, had dealings with Guthrie. A substantial volume of business was transacted with Guthrie, including purchases from Guthrie for import and purchases for Guthrie. All these transactions were recorded in a running account current. The credit side of the account current consisted in large part of entries covering lumber shipments from Guthrie and proceeds from drafts. The debit entries were for shipments for the account of Guthrie and included commissions, shipping charges, bills of lading, consular charges, postage, cables, freight, loading, etc. The account current also shows professional charges covering legal and notarial fees and *393 a financial advisory fee of [*] 310.7.6. It also contains entries of the total amount of charges shown on monthly debit sheets, which in turn show charges such as for allowances on defective merchandise, telegraph of quotations on merchandise, traveling expenses, cables, consular fees, margins and commissions. The petitioner had many transactions in other parts of the world similar to those with Guthrie, and carried similar accounts current with interest on debits and credits calculated on a half yearly basis. The petitioner was not aware of United States income tax liability until tentatively so advised in June, 1935. It then requested Guthrie to seek the advice of its local attorneys and auditors and was advised that there was income tax liability. A return was filed from San Francisco on or about September 10, 1936, for the fiscal year ending March 31, 1936, in which was reported the income for the entire preceding period from the time of its incorporation in 1930. After the receipt of a letter from the Commissioner of Internal Revenue dated December 30, 1937, the returns for the several years herein involved were prepared and filed on October 22, 1938. In such returns, items *394 of income and deductions were reported as follows: [SEE TABLE IN ORIGINAL] The gross income in such returns from sources within the United States was converted from British pounds sterling to United States dollars at the prevailing rates of exchange applicable on the accrual dates of the respective items of income, pursuant to instructions from the office of respondent. The loss and expense deductions were converted from British pounds sterling into United States dollars at the weighted average of exchange obtained by dividing each year's total gross income from sources within the United States in dollars by each year's total gross income from sources within the United States in pounds sterling. The rates of exchange used were per pound as follows: [SEE TABLE IN ORIGINAL] The interest income shown in the returns is the interest accrued on the account current between petitioner and Guthrie heretofore referred to under Item 10 of petitioner's gross income. The loss in 1935 is the loss of [*] 255 referred to under Item 15 of petitioner's expenses or debits. The guarantee fees are [*] 150 for each year referred to under Item 3 of petitioner's gross income at varying rates of exchange. *395 The finance commissions of $707.85 and $684.60 claimed as deductions are the commissions of [*] 143 and [*] 140 converted into dollars paid by petitioner to Guthrie in the years indicated. The deduction entitled "Ratable part of allocable deductions allocated to U.S. income" was computed on a separate schedule in each return, as follows: [SEE TABLE IN ORIGINAL] The deduction of the ratable part of allocable deductions allocated to United States income was disallowed by the Commissioner. Opinion STERNHAGEN, Judge: The petitioner is a foreign corporation and during the taxable years had no office or place of business in the United States. Its principal place of business was in London, from which it carried on business in various parts of the world. In each of the taxable years it derived income from sources within the United States, consisting entirely (except for the [*] 150 guarantee fees) of interest from Balfour, Guthrie & Company, a United States corporation, on a running account. To no extent were its expenses which were connected with this income identifiable, and no such expenses, with the small exceptions of $707.85 in 1934, and $684.60 in 1935, were specifically taken *396 as deductions upon its returns. In each year the petitioner took a deduction of a ratable part of the total expense of its entire business upon the ratio of United States income to total income. This deduction the Commissioner disallowed, and this is the major subject of controversy. Section 232, Revenue Acts of 1928, 1932 and 1943, [1] is in Supplement I, which covers the tax on Foreign Corporations. It provides for the deduction of expenses specifically connected with United States income, and of a ratable portion of unallocable expenses, as provided in Section 119, in the ratio of United States income to total income, Regulations 74, Articles 1111, 680; Regulations 77 and 86, Articles 231-1, 119-10; Third Scottish American Trust Co. v. United States, 37 Fed. Supp. 279. It is with regard to the application of the provision for apportionment that the parties here are in dispute. Supplement B covers the computation of net income of all taxpayers, and within this supplement Section 119 covers Income from Sources within the United States. Since all this petitioner's taxable net income is from sources in the United States, its computation is covered by *397 subsection (b), [2] "Net Income from Sources in United States", and this, like Section 232, provides for the deduction of the expenses properly allocated to United States gross income, and also of a "ratable part of any expenses * * * which cannot definitely be allocated to some item or class of gross income." This requires a taxpayer who seeks a deduction of expenses not specifically and identifiably connected with some item or class of United States income to prove that such expenses are connected with income from United States sources and that they cannot definitely be allocated to some item or class of United States income. If he proves this, he is entitled to the deduction of a ratable portion of such expenses. Fajardo Sugar Co. of Porto Rico, 20 B.T.A. 980; De Nederlandsche Bank, 35 B.T.A. 53; Third Scottish American Trust Co. v. United States, supra; cf. Corporacion de Ventas de Salitre y Yoda de Chile, 44 B.T.A. 393. *398 The petitioner has undertaken to prove the applicability of the apportionment method. Although its principal witness, thoroughly experienced in accounting and long familiar with petitioner's ramified business and accounts, testified categorically on direct examination that all the petitioner's expenses had some relation to the United States income, and that the part allocable to United States income could not be determined except by apportionment, respondent contends that petitioner's evidence is insufficient to substantiate this and satisfy petitioner's burden. We are of opinion that petitioner has demonstrated that the use of a method of apportionment is within the statutory provision. It is clear that some part of the general overhead expenses is properly attributable to income from United States sources, and that the amount of such part is to a large extent unascertainable except by some mathematical or formulaic method. Congress apparently intended the apportionment method as a ready means of determining a figure for deduction. In Third Scottish American Trust Co. v. United States, supra, the Court of Claims said: The items of gross income specified *399 in subsection (a) are items to be included in determining "income from sources within the United States." From these items subsection (b) permits the deduction of expenses, etc., "properly apportioned or allocated thereto"; that is to say, expenses incurred in the earning of the income specified. Further, it was recognized that the taxpayer would incur expenses attributable to the earning of both its United States and its other income, and that it would not be possible to say with any degree of accuracy just how much of it was incurred in the earning of United States income and how much in the earning of other income. So, in such case it was provided that the taxpayer might deduct a "ratable part" thereof. * * * * *
It is no doubt true that the general expenses of the home office were incurred primarilly in the carrying on of the business of the company outside of the United States, but it cannot be said that some part of these expenses were not spent in connection with the making and supervision of the plaintiff's investments in this country, from which it received interest and dividends. Just what part was spent in connection with United States investments it is impossible to say. *400 This contingency was recognized by Congress when provision was made for the deduction of a "ratable part of any expenses, losses, or other deductions which can not definitely be allocated to some item or class of gross income." There is nothing in this record, either in the testimony of the witness or in the circumstances, which would support disbelief of the credibility of the evidence that identification or definite allocation of expenses is impossible. It does not even appear that by a different accounting method some expenses could have been more assuredly assigned to specific items of income, and such a conjecture would not be enough to support the disallowance of a ratable part of deductible expenses without some countervailing affirmative evidence to that effect. On this record the petitioner, by a preponderance of the evidence, has shown that the general expenses attributable to its income from United States sources cannot be identified and can only be determined by a method of apportionment upon the ratio of United States income to the total income. This is a prima facie case which the respondent has not weakened by cross-examination or overcome by evidence showing *401 the contrary. We therefore sustain the petitioner's contention that it may deduct a ratable portion of its general expenses. The Commissioner's position is stated in his brief as follows: The income in question resulted from the passive accrual of interest on opening balances. This accrual was not a ponderous task involving the expenditure of thousands of dollars as petitioner's claim for a deduction would indicate. The accrual took place whether anyone did anything or not and inasmuch as the two companies were situated in different countries, the accrual of interest on the balances was less costly than collecting these amounts. * * * * *
Petitioner is seeking to deduct from its interest income a ratable part of its expenses, based upon the ratio of United States income to the total gross income. The use of the proration method is not calculated to give a fair and proper result when, as in this case, the United States income and the foreign income are entirely dissimilar in nature. Petitioner's commodity business involves considerable expense while the accrual of interest involves apparently no expense. We cannot accept this view. From the testimony it appears that all petitioner's *402 general departments had dealings with Guthrie and it could not be found as a fact that the Guthrie account, even though it be regarded as involving only interest, was free from expense, nor would we be justified in so holding on general principle. The legislation is framed on the assumption that when some expense, not ascertainable and determinable, is attributable to United States income, its amount for purpose of deduction shall be calculated by apportionment, and this deduction cannot be denied by a sweeping assertion that because the income consists of accrued interest there is no expense or that the legislative method of determination results in a deduction so disproportionately large as to defeat the statutory deduction. Undoubtedly the application of a mathematical formula may be expected to have extreme results, but it must be supposed that this was contemplated as an inherent effect of the statute. Third Scottish American Trust Co. v. United States, supra. The petitioner has committed an error in omitting from the denominator of the ratio the amount of its investment income, and this should be corrected in recomputation. In view of the evidence, *403 the amounts of trading charges on export business (item 14) and the accounting fees of item 12 should be eliminated from the computation of the ratable amount. The evidence does not show that petitioner's failure to file its returns at the time required by law was due to reasonable cause, and 25 per cent should be added to the deficiency. Decision will be entered under Rule 50. Footnotes
1. SEC. 232. DEDUCTIONS. In the case of a foreign corporation the deductions shall be allowed only if and to the extent that they are connected with income from sources within the United States; and the proper apportionment and allocation of the deductions with respect to sources within and without the United States shall be determined as provided in section 119↩, under rules and regulations prescribed by the Commissioner with the approval of the Secretary. 2. SEC. 119. INCOME FROM SOURCES WITHIN UNITED STATES. * * * * *
(b) Net income from sources in United States. - ↩ From the items of gross income specified in subsection (a) of this section there shall be deducted the expenses, losses, and other deductions properly apportioned or allocated thereto and a ratable part of any expenses, losses, or other deductions which can not definitely be allocated to some item or class of gross income. The remainder, if any, shall be included in full as net income from sources within the United States.